## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRAIG WIGGINS and REBECCA TORRES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., dba DOVE.<br><br>Defendant. | Case No. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Craig Wiggins and Rebecca Torres, by their attorneys, on their own behalf and on behalf of all others similarly situated, bring this class action against Unilever United States, Inc., doing business as "Dove."

## I.   INTRODUCTION

1.    Whether an annoying patch of dry skin or an oozing rash that affects one's social life, as much as 70% of the U.S. population is allergic to at least one personal care product ingredient.

2.    Many people do not know to which ingredient they are allergic. Allergic reactions can be attenuated in both time and space. Some allergic reactions will manifest a week after exposure to the allergen. If the person had an allergic response to the ingredient in the past, he may find symptoms on the *original* site of the allergic response, rather than on the part of the body that was most recently exposed to the allergen. (The immune system is thus said to

sometimes have a "memory.")

3.    Washes and shampoos will often get into children's eyes, causing tremendous discomfort and eye damage.

4.    Thus, consumers increasingly seek hypoallergenic and tear-free products. Those who do not suffer from skin allergies seek hypoallergenic products to avoid developing a skin allergy. Those who do suffer from a skin allergy seek hypoallergenic products to avoid the inflammatory cascade caused by an unidentified skin allergen. And those with children additionally seek tear-free products so as to not cause their children to suffer eye irritation or damage during bath time.

5.    Since its founding, Dove has based its brand as being a trustworthy expert in skin care and baby care, offering information and advice to consumers desiring safe products for sensitive skin.

6.    Seeking to capture the growing market for hypoallergenic and tear-free products, Dove prominently labels many of its products as "hypoallergenic," and adds to baby washes and shampoos an additional "tear-free" claim. *See* Product Labels attached as Exhibit 1.

7.    However, despite its marketing scheme, Dove's products are chock-full of a significant array and substantial amount of known skin sensitizers (allergens), agents that cause serious skin damage, chemicals that cause serious eye damage lasting longer than 21 days, skin irritants, and eye irritants. *See* Exhibit 1 and *infra* at ¶¶ 82-91.

8.    Dove's products all contain skin allergens (a.k.a. skin sensitizers) in an amount that has already been shown to cause an allergic reaction to a significant portion of the population, under the Globally Harmonized System of Classification.

9.     For example, Dove's DermaSeries Gentle Cleansing Hypoallergenic Body Wash contains BHT, iodopropynyl butylcarbamate, and niacinamide, which are all classified as "Category 1 skin sensitizers" under the Globally Harmonized System of Classification by governmental bodies responsible for classifying chemicals, meaning that they cause an allergic response to a significant portion of the population in *extremely* small amounts. These ingredients, as well as the cocamidopropyl betaine (the second most voluminous ingredient, after water) are all classified by the American Contact Dermatitis Society as "core allergens," *i.e.,* allergens that most frequently cause allergic reactions in human patch tests. In fact, in 2004, the American Contact Dermatitis Society named cocamidopropyl betaine the "Contact Allergen of the Year," a distinction it awards to allergens causing significant allergic contact dermatitis.



Exhibit 1.

10.    As another example, Dove's "hypoallergenic" and "tear-free" Baby Tip to Toe Sensitive Moisture Wash contains tetrasodium EDTA, citric acid, and cocamidopropyl betaine, which governmental bodies have classified as causing "Category 1 eye damage" under the Globally Harmonized System of Classification, meaning they cause serious damage to the eye tissue or serious physical decay of vision which is not fully reversible within 21 days. The product's cocamidopropyl betaine (the second most voluminous ingredient, after water), as well as its phenoxyethanol and sodium benzoate are additionally listed as "core allergens" by the American Contact Dermatitis Association.



Exhibit 1. *See also* Safety Data Sheet, Tip to Toe Wash, attached as Exhibit 2 (showing the product contains 1-5% cocamidopropyl betaine).

11.    This is a class action on behalf of a national class of consumers who purchased Dove's body care products that were falsely and misleadingly marketed as "hypoallergenic" (some of which were also falsely and misleadingly marketed as "tear-free"). These products in fact all contain a shocking array of compounds known to cause allergic responses. These products also contain a plethora of other compounds known to cause severe skin corrosion,

serious eye damage, or are otherwise toxic or hazardous in the case of skin contact. These products are also stuffed with other chemicals that have not been analyzed for their skin sensitization potential.

12. By deceiving consumers about the nature, quality, and/or ingredients of its products, Dove is able to command a premium price, increasing consumers' willingness to pay and take away market share from competing products, thereby increasing its own sales and profits.

13. Consumers lack the ability to test or independently ascertain whether an ingredient is an allergen or an irritant, especially at the point of sale.

14. Reasonable consumers also must and do rely on the product company to honestly report the known characteristics of ingredients that are in a product.

15. Dove further encouraged consumers to rely on its representations, marketing itself as an honest company that provides transparent and truthful information about its products' ingredients.

16. Further encouraging consumers' reliance on Dove's "hypoallergenic" and "tear-free" promises, Dove labels only *some* products as hypoallergenic, and only *some* products as tear-free, giving consumers the (false) impression that Dove carefully reviewed each ingredient in its products to ensure that the "hypoallergenic" and "tear-free" promises was made for only those products that truly are as represented. *See, e.g.,* Exhibit 3.

17. Dove intended for consumers to rely on its representations, and hundreds of thousands of reasonable consumers did in fact so rely.

18. As a result of its false and misleading labeling, Dove was able to sell these

products to hundreds of thousands of consumers throughout the United States and to profit handsomely from these transactions.

19.    Dove's false and misleading representations and omissions violate state laws and common law, detailed more fully below.

20.    Plaintiffs bring this action to stop Dove's deceptive and misleading practices.

## II.  PARTIES

**A. Plaintiff Craig Wiggins**

21.    Plaintiff Craig Wiggins is an individual consumer who is a citizen of the State of New York and resident of Bronx. For approximately thirty-six months, Plaintiff Wiggins regularly purchased Dove's Nourishing Body Wash and Dove's Men+Care Body and Face Wash Sensitive Shield from the Rite Aid located at 840 Westchester Ave., Bronx, NY, 10459. Plaintiff Wiggins consistently used a credit card for his purchases. Plaintiff Wiggins estimates that he purchased the product every four to six weeks.

22.    In deciding to make these purchases, Plaintiff Wiggins saw, relied upon, and reasonably believed the label representation that the products were "hypoallergenic." These representations were a significant reason for his purchases.

23.    Plaintiff Wiggins has suffered skin irritation, eye irritation, dermatitis, and/or an allergic skin reaction in the past.

24.    In the case of common skin irritation or dermatitis, Plaintiff Wiggins, like similarly situated consumers, is unsure whether what seemed like skin or eye irritation or dermatitis was in fact an allergic response to an ingredient in a personal care product.

25.    Like similarly situated consumers, Plaintiff Wiggins does not know the identity

of every ingredient he is allergic to. Moreover, like similarly situated consumers, Plaintiff Wiggins does not know which ingredients he may develop an allergy to.

26.    Had Plaintiff Wiggins known at the time of his purchases that these products were not hypoallergenic as promised, he would not have purchased these products.

27.    Had Plaintiff Wiggins known at the time that these products contained skin sensitizers or skin allergens, he would not have purchased these products.

28.    Had Plaintiff Wiggins known at the time that these products contained irritants or substances that cause skin or eye damage, he would not have purchased these products.

29.    Plaintiff Wiggins purchased, purchased more of, or paid more for, these products than he would have had he known that the products were not hypoallergenic, as promised.

30.    If Dove's products were reformulated such that its representations were truthful, Plaintiff Wiggins would consider purchasing Dove's products in the future.

31.    The products that Plaintiff Wiggins purchased are substantially similar to Dove's other products alleged to be falsely labeled.

**B. Plaintiff Rebecca Torres**

32.    Plaintiff Rebecca Torres is an individual consumer who, at all times material hereto, was a citizen of the State of California and resident of Riverside. For approximately thirty-six months, Plaintiff Torres regularly purchased Dove's Beauty Bar, Deodorant, Dry Skin Relief Body Lotion, and Shampoo Rich Moisture from Walmart located at 5200 Van Buren Blvd., Riverside, CA 92503, and from Food4Less located at 4250 Van Buren Blvd., Riverside, CA 92503. Plaintiff Torres consistently used a credit card for her purchases. Plaintiff Torres estimates that she purchased the product every two weeks.

33.    In deciding to make these purchases, Plaintiff Torres saw, relied upon, and reasonably believed the label representation that the products were "hypoallergenic." These representations were a significant reason for her purchases.

34.    Plaintiff Torres and her family members have all suffered skin irritation, eye irritation, dermatitis, and/or an allergic skin reaction in the past.

35.    In the case of common skin irritation or dermatitis, Plaintiff Torres, like similarly situated consumers, is unsure whether what seemed like skin or eye irritation or dermatitis was in fact an allergic response to an ingredient in a personal care product.

36.    Like similarly situated consumers, Plaintiff Torres does not know the identity of every ingredient she and her family are allergic to. Moreover, like similarly situated consumers, Plaintiff Torres does not know which ingredients she or her family may develop an allergy to.

37.    Had Plaintiff Torres known at the time of her purchases that these products were not hypoallergenic as promised, she would not have purchased these products.

38.    Had Plaintiff Torres known at the time that these products contained skin sensitizers or skin allergens, she would not have purchased these products.

39.    Had Plaintiff Torres known at the time that these products contained irritants or substances that cause skin or eye damage, she would not have purchased these products.

40.    Plaintiff Torres purchased, purchased more of, or paid more for, these products than she would have had she known that the products were not hypoallergenic, as promised.

41.    If Dove's products were reformulated such that its representations were truthful, Plaintiff Torres would consider purchasing Dove's products in the future.

42.    The products that Plaintiff Torres purchased are substantially similar to Dove's

other products alleged to be falsely labeled.

**C. Defendant Dove**

**43.**    Defendant Unilever United States, Inc., doing business as Dove, is a corporation with its principal place of business located at Englewood Cliffs, NJ 07632. Unilever markets and causes the manufacture and sale of Dove products to U.S. residents throughout New York, California, and the United States.

**D. Jurisdiction**

44.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Jurisdiction under CAFA is met because the proposed number of putative class members exceeds 100, at least one plaintiff and one defendant are citizens of different states, and the amount in controversy, including, but not limited to the aggregate amount of relief sought by absent class members, exclusive of interest and costs, exceeds $5 million.

45.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false, misleading and deceptive information regarding the nature, quality, and/or ingredients of the products, occurred within this District.

46.    No other forum would be more convenient for the parties and witnesses to litigate this action.

47.    This Court has personal jurisdiction over Dove because it is a corporation or individual with sufficient minimum contacts in New York or otherwise intentionally avails itself of the laws of this State through its marketing and sales of the products at issue in New

York, to consumers in New York, and to retailers throughout New York, so as to render the exercise of jurisdiction by this Court consistent with traditional notions of fair play and substantial justice.

### III. FACTUAL ALLEGATIONS

**A. Consumers Actively Seek Hypoallergenic Body Care Products**

48.    According to the Centers for Disease Control and Prevention ("CDC"), 8.8 million children (12% of U.S. children) reported skin allergies in 2012. Skin allergies are even more prevalent among young children; the CDC reports that 14.2% of children between the ages of 0 and 4 suffered a skin allergy in 2012.

49.    These numbers are likely to underreport the prevalence of allergic contact dermatitis; recent studies show that somewhere between 14-70% of children suffer from skin allergies, based on positive patch skin tests.

50.    Skin allergies are similarly prevalent among adults.

51.    When skin is exposed to a sufficient amount of a chemical allergen, the skin is "sensitized." Upon re-exposure to the allergen, the skin initiates an inflammatory cascade, causing skin changes associated with allergic contact dermatitis. These include redness, oedema (fluid retention), scaling, fissures (cracking), vesicles (fluid-filled sacs), bullae (bubble-like cavity), and eventually oozing.

52.    Contact sensitization and related skin allergies can severely affect a person's quality of life, depending on the severity and the site of skin sensitization. People suffering from noticeable skin allergies will try to hide the symptoms or avoid public interactions. In either case, skin allergies can dramatically affect a person's confidence and engagement in life.

53.     It is difficult to identify the substance causing an allergic response. Allergic contact dermatitis develops several days after exposure to a skin allergen. Some substances do not cause symptoms until a week after exposure.

54.     Even more, once an individual is sensitized to an allergen, future contact with the allergen can trigger a response in the *original* site of sensitization. For example, if someone first had an allergic response to a product used on the face, and later used a different product containing the same allergen on the legs, the allergic response will sometimes manifest on the *face* – even if the face was never exposed to the second product.

55.     When a consumer cannot identify the ingredient to which they are allergic, allergic contact dermatitis will persist, and, it is believed, will take longer to resolve even after the cause is identified.

56.     Thus, consumers will actively seek out hypoallergenic products – to avoid a skin allergy from occurring at all and/or to prevent a known skin allergy from repeating the inflammatory cascade.

**B. Dove Labels Its Products as "Hypoallergenic," and Additionally Labels Some as "Tear-Free"**

57.     On the products' labels, and again on its website, Dove represents that certain of its products are "hypoallergenic." These products are all falsely labeled, as all of these products contain skin allergens in an amount known to cause an allergic reaction. They also all contain ingredients that cause skin irritation or skin damage.

58.     On the products' labels and again on its website, Dove represents that certain Baby Dove washes and shampoos are both "hypoallergenic" and "tear-free." These products are falsely labeled, as all these products contain skin allergens in an amount known to cause an

allergic reaction. They also all contain ingredients that cause skin irritation or skin damage.

They also all contain ingredients that cause serious eye damage.

59.    The Falsely Labeled Products are:

- Baby Bar Rich Moisture
- Baby Wipes
- Baby Wipes Rich Moisture
- Baby Wipes Sensitive Moisture
- Beauty Bar
- Calming Moisture Night Time Wash
- Complete Care Baby Essentials Gift Set
- Complete Care Bath Time Essentials Gift Set
- Deodorant
- Dry Skin Expert Repairing Balm
- Dry Skin Relief Body Lotion
- Dry Skin Relief Face Cream
- Dry Skin Relief Gentle Cleansing Body Wash
- Dry Skin Relief Gentle Cleansing Face Bar
- Dry Skin Relief Hand Cream
- Dry Skin Relief Replenishing Body Lotion
- Dry Skin Relief Replenishing Face Cream
- Dry Skin Relief Replensing Hand Cream
- Wash Fragrance-Free Moisture
- Wash Rich Moisture
- Instant Foaming Body Wash Sensitive Skin
- Lotion Rich Moisture
- Lotion Sensitive Moisture
- Lotion Fragrance Free Moisture
- Men+Care Body and Face Wash Sensitive Shield
- Night Time Lotion
- Night Time Tip to Toe Wash
- Nourishing Body Wash
- Shampoo Rich Moisture
- Tip to Toe Wash Sensitive Moisture
- Tip to Toe Wash Rich Moisture
- Baby Essentials Gift Set
- Bath Time Essentials Gift Set

60.    The labels of these products are attached as Exhibit 1.

61.    Dove regularly introduces new products, relabels products, reformulates products,

and renames products. Plaintiffs reserve the right to expand or limit the list of Falsely Labeled

Products, as warranted by discovery, product modifications, and/or new product launches.

**C. Definition of Hypoallergenic**

62.    Reasonable consumers believe and expect that a hypoallergenic product does not contain skin allergens in an amount that is known to cause an allergic reaction in a significant number of people.

63.    Dove encourages this understanding.

64.    Dove's own definition of "hypoallergenic" comports with the reasonable consumer's definition of "hypoallergenic." As Dove explains on its website:

> Look at any of our baby products and you'll see the word 'hypoallergenic' – it's our promise to parents that the entire Baby Dove range has been carefully formulated and tested to ensure it minimises allergy risks.

Dove, Hypoallergenic - what does it mean and why does it matter?, *available at* https://www.dove.com/us/en/baby/more-from-baby-dove/baby-care-tips/hypoallergenic-what-does-it-mean-and-why-does-it-matter.html (last viewed Jan. 13, 2021), and attached as Exhibit 4.

65.    Reasonable consumers also believe and expect that a hypoallergenic product does not contain a significant amount of ingredients known to produce skin irritation, skin corrosion, and/or eye damage. In buying a hypoallergenic product, consumers seek to avoid negative skin reaction -- irrespective of whether the reaction is caused by an allergen or an irritant.

66.    Dove encourages this understanding.

67.    Dove knows that consumers rely upon it to not only test the final product formulation for basic safety, but to select only those ingredients that it considers to be safe.

68.    Dove stresses not only product safety, but *ingredient* safety. Dove claims that it

"look[s] at our existing formulas with fresh eyes: using the latest research to explain why we'll keep using some ingredients and avoiding any ingredients we think could be harmful to you." Dove, Rethinking Our Ingredients, *available at* https://www.dove.com/us/en/stories/about-dove/rethinking-our-ingredients.html (last viewed Jan. 13, 2021), and attached as Exhibit 5.

69.    "For us, choosing the right ingredients takes time. We only pick ingredients that do a job like no other and that we have individually assessed to be safe." Dove, Ingredients We Do Use, *available at* https://www.dove.com/us/en/stories/about-dove/ingredients-we-use.html (last viewed Jan. 13, 2021), and attached as Exhibit 6.

**D. Definition of Tear-Free**

70.    Reasonable consumers believe and expect that a product that is labeled as "tear-free" does not contain eye irritants or compounds that can cause eye damage at a concentration that could elicit eye irritation and/or eye damage.

71.    Dove agrees with the reasonable consumer's definition of "tear-free." As Dove explains on its website:

> It's our promise that they've been carefully formulated by our scientists (many of them parents themselves) and ophthalmologist-tested to ensure they're mild and won't irritate or sting your baby's eyes.

Dove, What's the secret to a tear-free baby bathtime?, *available at* https://www.dove.com/us/en/baby/more-from-baby-dove/baby-care-tips/secret-to-a-tear-free-bathtime.html (last viewed Jan. 13, 2021), and attached as Exhibit 7.

**E. Dove's Representations Are False**

72.    The United Nation's Globally Harmonized System of Classification and Labeling

of Chemicals ("GHS") provides globally uniform physical, environmental, health, and safety information on hazardous chemical substances and mixtures. It establishes criteria for the classification of chemical substances to facilitate global trade.

73.     Under, GHS, a substance is a "Category 1 skin sensitizer" if it causes an allergic response to a significant portion of the population even in ***extremely*** small amounts, *e.g.,* ≤ 0.1% intradermal induction dose causes a positive response in more than 30% of guinea pigs in a guinea pig maximization test. The GHS standard for skin sensitizers is attached as Exhibit 8.



According to independent tests, a solution with 0.1% of the allergen leads to an allergic response in 30% of test animals.

74.     The American Contact Dermatitis Society ("ACDS") is the premier professional society that cultivates advances in the diagnosis and care of contact dermatitis through its development and promotion of education, research, and advocacy. Updated regularly, ACDS publishes a list of "Core Allergens" - allergens that most frequently cause allergic reactions in human patch tests.

75.     ***All*** Dove's Falsely Labeled Products contain substances classified by reputable authorities as skin sensitizers. *See infra* at ¶ 82 (identifying skin sensitizers) and Exhibit 1 (showing all products labeled as "hypoallergenic" contain these skin sensitizers).

76.     ***All*** Dove's Falsely Labeled Products also contain skin sensitizers/allergens in an amount that is known to cause an allergic response in a substantial number of people.

77.     Thus, Dove's Falsely Labeled Products are not hypoallergenic, and its on-the-label promise that its products are "hypoallergenic" is false.

78.     *All* Dove's Falsely Labeled Products also contain significant amounts of ingredients classified under GHS by governmental bodies as causing skin damage or irritation. The GHS standard for skin corrosive agents and skin irritants is attached as Exhibit 8. *See infra* at ¶¶ 85-87 (identifying irritants and corrosive agents) and Exhibit 1 (showing which products labeled as "hypoallergenic" contain these ingredients).

79.     Thus, Dove's on-the-label promise that its products are "hypoallergenic" is *also* misleading.

80.     *All* Dove's Falsely Labeled Products that promise to be "tear-free" contain significant amounts of ingredients classified under GHS by governmental bodies as causing Category 1 eye damage, meaning that it causes serious damage to the eye tissue or serious physical decay of vision which is ***not*** fully reversible within 21 days of application. *See infra* at ¶ 88 (identifying agents causing Category 1 eye damage) and Exhibit 1 (showing which products labeled as "tear-free" contain these ingredients).

81.     Thus, Dove's Falsely Labeled Products are not "tear-free", and its on-the-label promise that its products are "tear-free" is false.

82.     *All* Dove's Falsely Labeled Products contain one or more of the following chemicals that are recognized by governmental authorities as skin sensitizers (a.k.a. skin allergens) or by the American Contact Dermatitis Society ("ACDS") as a core allergen:

     a.   ***BHT***; classified as a Category 1 skin sensitizer under the United Nation's Globally Harmonized System of Classification and Labeling of Chemicals

("GHS") by an official governmental body authorized to classify chemicals
(Japan); listed as a core allergen by ACDS.

b.    ***Butylated Hydroxytoluene***; classified as a Category 1 skin sensitizer under
      GHS (Japan); listed as a core allergen by ACDS.

c.    ***Cetearyl Alcohol***; listed as a core allergen by ACDS.

d.    ***Cetearyl Glucoside***; listed as a core allergen by ACDS.

e.    ***Cocamidopropyl Betaine***; listed as a core allergen by ACDS; European
      Chemicals Agency ("ECHA") reports skin sensitization as a property of
      concern because "a majority of data submitters agree this substance is skin
      sensitising."

f.    ***DMDM Hydantoin***; classified as a Category 1 skin sensitizer under GHS
      (Australia); classified as a skin sensitizer under GHS (New Zealand); listed
      as a core allergen by ACDS.

g.    ***Iodopropynyl Butylcarbamate***; classified as a Category 1 skin sensitizer
      under GHS (ECHA, Australia); listed as a core allergen by ACDS.

h.    ***Methylisothiazolinone***; classified as a Category 1 skin sensitizer under GHS
      (ECHA, Australia); listed as a core allergen by ACDS.

i.    ***Niacinamide***; classified as a Category 1 skin sensitizer (New Zealand);
      reported to ECHA by manufacturers or importers as a Category 1 skin
      sensitizer.

j.    ***Phenoxyethanol***; listed as a core allergen by ACDS.

k.    ***Propylene Glycol***; listed as a core allergen by ACDS; reported to ECHA by

manufacturers or importers as a Category 1 skin sensitizer.

l.  ***Sodium Benzoate***; listed as a core allergen by ACDS; reported to ECHA by manufacturers or importers as a Category 1 skin sensitizer.

m.  ***Sodium Laureth Sulfate***; classified as a Category 1 skin sensitizer under GHS (New Zealand); ECHA reports skin sensitization as a property of concern because "a majority of data submitters agree this substance is skin sensitising."

n.  ***Triethanolamine***; classified as a Category 1 skin sensitizer under GHS (Japan); reported to ECHA by manufacturers or importers as a Category 1 skin sensitizer.

83.  ***All*** Dove's Falsely Labeled Products have one or more of the above recognized skin sensitizers in an amount that is known to cause an allergic reaction. For example, sodium cocamidopropyl betaine makes up 1-5% of Baby Dove's Tip to Toe wash, an amount far more than the approximately 0.1% concentration shown to cause an allergic response under the GHS testing. Exhibit 2.

84.  Other ingredients in Dove's Falsely Labeled Products were also reported to the ECHA by manufacturers or importers to as a Category 1 skin sensitizer, including: 4-tert-butylcyclohexyl acetate, acetylcedrene, acrylates copolymer, anisaldehyde, hexyl salicylate, lauric acid, polysorbate 20, PPG-9, sodium tallowate, TEA-dodecylbenzenesulfonate, tetramethyl acetyloctahydronaphthalenes, tetrasodium EDTA, xanthan gum, and zinc sulfate.

85.  Dove's Falsely Labeled Products also contain ingredients which have been classified by governmental authorities as causing Category 1 skin damage under GHS,

including **methylisothiazolinone** (ECHA and Australia) and **triethanolamine** (ECHA and Japan). The GHS Category 1 classification means that these ingredients irreversibly damage the skin after short exposure; in animal tests, the substance caused visible necrosis after exposure of less than 3 minutes (for thriethanolamine) or less than 14 minutes (for methylisothiazolinone). Corrosive reactions are typified by ulcers, bleeding, bloody scabs, and, by the end of observation at 14 days, by discoloration due to blanching of the skin, complete areas of alopecia (hair loss), and scars.

86. Dove's Falsely Labeled Products also contain substances governmental authorities have classified as Category 2 skin irritants under GHS, meaning that they cause significant erythema/eschar (redness and dead tissue) or edema (abnormal accumulation of fluid beneath the skin) lasting more than three days, or skin inflammation lasting longer than 14 days. These ingredients include: citric acid, cocamidopropyl betaine, DMDM hydantoin, iodopropynyl butylcarbamate, octisalate, sodium laureth sulfate, and TEA-dodecylbenzenesulfonate.

87. Dove's Falsely Labeled Products also contain substances governmental authorities have classified as Category 3 skin irritants under GHS, meaning that they also cause erythema/eschar (redness and dead tissue) or edema (abnormal accumulation of fluid beneath the skin) lasting more than three days. These ingredients include: ammonium chloride, ascorbic acid, BHT, butylated hydroxytoluene, cetearyl alcohol, cetearyl glucoside, cetyl alcohol, dipropylene glycol, disodium EDTA, panthenol, and zinc sulfate.

88. All of the Dove products labeled "tear-free" contain **cocamidopropyl betaine, citric acid,** and **tetrasodium EDTA**, which have all been classified by governmental authorities

as causing Category 1 eye damage under GHS, meaning that it causes serious damage to the eye tissue or serious physical decay of vision which is ***not*** fully reversible within 21 days of application.

89.    All of the Dove products labeled "tear-free" contain a significant amount of cocamidopropyl betaine. In fact, in Dove's products labeled "tear-free," cocamidopropyl betaine is the second or third ingredient by volume.

90.    Dove's "tear-free" products also contain substances governmental authorities have classified as Category 2A eye irritants under GHS, meaning that they cause corneal opacity, iritis, conjunctival redness, or conjunctival edema, lasting 7-21 days. These ingredients include sodium stearate.

91.    Dove's "tear-free" products also contain substances governmental authorities have classified as Category 2B eye irritants under GHS, meaning they cause corneal opacity, iritis, conjunctival redness, or conjunctival edema, reversible in seven days. These ingredients include: titanium dioxide and phenoxyethanol. They also contain substances governmental authorities have classified as Category 2 eye irritants under GHS, meaning that they adverse effects on the cornea, iris, and conjunctiva. These ingredients include: dimethiconol, lauric acid, sodium chloride, TEA-dodecylbenzenesulfonate.

92.    Dove's conduct deceived and/or was likely to deceive the public.

93.    Consumers would not know the true nature of the ingredients merely by reading the ingredient label. Its discovery requires investigation beyond the grocery store and knowledge of chemistry beyond that of the average reasonable consumer.

94.    Even worse - further deceiving consumers who know to avoid a certain chemical,

Dove adds ingredients to its products without disclosing them in the product package's ingredient list.

95.    For example, Dove added tetramethyl acetyloctahydronaphthalenes to some products, which is classified as an "established contact allergen in humans" by the ECHA, but did not disclose this on the product label. *See* SmartLabel, Dove Men + Care, Body and Face Wash, Sensitive Shield, *available at* https://smartlabel.labelinsight.com/product/2744002/ingredients/fragrance-(parfum) (last viewed Feb. 2, 2021) and attached as Exhibit 9.



### F.    Location Of The Misrepresentations

96.    Dove made the above false, deceptive, and misleading misrepresentations and omissions on the package of the Falsely Labeled Products. *See* Exhibit 1.

97.    Dove repeated the above false, deceptive, and misleading misrepresentations and omissions on its online retail product page for the Falsely Labeled Products. *See* Exhibit 1.

98.    The misrepresentations and omissions were uniform and have actually been communicated to Plaintiffs and to each member of the Class at every point of purchase and

consumption.

**G.  Dove's Deceptive And Misleading Omissions**

99.    Dove deceptively and misleadingly conceals other material facts about the Falsely

Labeled Products, including:

>    a.    the true nature of the Falsely Labeled Products' ingredients;
>
>    b.    the identity of the Falsely Labeled Products' ingredients;
>
>    c.    that the Falsely Labeled Products contain sensitizers, irritants, and/or substances otherwise damaging to skin or eyes;
>
>    d.    the concentration of the sensitizers, irritants, and/or substances otherwise damaging to skin or eyes in the Falsely Labeled Products;
>
>    e.    that the Falsely Labeled Products are not "hypoallergenic;"
>
>    f.    that the Falsely Labeled Products are not what a reasonable consumer would consider to be "hypoallergenic;"
>
>    g.    that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled as "hypoallergenic;"
>
>    h.    that the Falsely Labeled Products are not "tear-free;"
>
>    i.    that the Falsely Labeled Products are not what a reasonable consumer would consider to be "tear-free;"
>
>    j.    that the Falsely Labeled Products contain chemicals that a reasonable consumer would not expect in a product labeled as "tear-free."

100.    Plaintiffs and the members of the Classes are not at fault for failing to discover

Dove's wrongs earlier and had no actual or presumptive knowledge of facts sufficient to put

them on inquiry notice.

101. Dove has concealed the identity of several ingredients. Discovery is therefore necessary to determine their identity. These ingredients may also be sensitizers, irritants, or otherwise toxic to the skin.

102. For example, Dove adds *"fragrance"* or *"parfum"* to its products but does not identify what chemical is used. Many ingredients used as fragrances are known skin sensitizers. Many also cause serious eye damage.

103. Furthermore, Dove has not disclosed the concentration of each ingredient in its products.

104. These facts are not ascertainable and are still not known to Plaintiffs, the Class members, and reasonable consumers. Dove's concealment tolls the applicable statute of limitations.

105. To this day, Dove continues to conceal and suppress the existence, true identity, nature, and concentration of the sensitizers, irritants, and/or otherwise skin or eye damaging substances in the Falsely Labeled Products.

106. Similarly, to this day, Dove continues to conceal and suppress the fact that the Falsely Labeled Products are not "hypoallergenic" as promised, and are not "tear-free" as promised.

107. Dove represents elsewhere on the product label and on its website that the products are "mild," "gentle," appropriate for sensitive skin, etc. *See* Exhibit 1. This further obscures the fact that Dove's products are not "hypoallergenic" and are not "tear-free", as promised.

**H.  Dove Knew Its Representations Were False**

108.   Dove holds itself out to the public as a trusted expert in the area of hypoallergenic, tear-free, safe, mild, and gentle personal care products.

109.   Dove knew what representations it made regarding the Falsely Labeled Products, as all representations appear on the products' packages.

110.   Dove also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages and are further disseminated on its website.

111.   Dove is governed by and thus is presumed to know the federal regulations and state laws that control the labeling of the Falsely Labeled Products, and thus is aware that many of the ingredients have been federally declared to be chemical compounds that require inventory reporting under the Toxic Substance Control Act, and are hazardous or toxic compounds that require special disclosures on safety data sheets.

112.   Dove thus knew all the facts demonstrating that its Falsely Labeled Products contain sensitizers, irritants, and otherwise harmful ingredients, and that these products were therefore falsely labeled.

**I.  Dove Intended Consumers To Rely**

113.   As Dove knows, consumers prefer hypoallergenic and tear-free products. As Dove knows, consumers will pay a premium for hypoallergenic products, will pay a premium for tear-free products, or would not purchase these products at all unless they were hypoallergenic and/or tear-free, as advertised.

114.  Dove  encourages  consumers'  preference  for  hypoallergenic  products  –

specifically for Dove's products. For example, Dove explains to parents that "up to 20% of children can have" eczema, and that while "the causes of eczema are hard to pin down," "[i]t's best to try and use the most simple creams, lotions, and washes that are hypoallergenic ...." Dove, Dealing with baby eczema your way, *available at* https://www.dove.com/us/en/baby/more-from-baby-dove/baby-care-tips/dealing-with-baby-eczema-your-way.html (last viewed Jan. 13, 2021), and attached as Exhibit 10.

115.    As another example, Dove states that "Hypoallergenic and unscented products are essential for keeping sensitive skin happy." Dove, Essential products for skin cleansing, *available at* https://www.dove.com/us/en/stories/tips-and-how-to/washing-and-bathing-tips/essential-products-for-skin-cleansing.html (last viewed Jan. 13, 2021), and attached as Exhibit 11. *See also* Dove, An expert guide to caring for very dry skin conditions, *available at* https://www.dove.com/us/en/dermaseries/more-from-dermaseries/skin-condition-tips/ask-an-expert-how-can-your-mind-and-body-affect-your-very-dry-skin.html (last viewed Jan. 13, 2021) ("From hypoallergenic to dermatologically-tested – the secret behind how to get rid of flaky skin lies in the label."), attached as Exhibit 12.

116.    Dove also encourages consumers' preference for tear-free products – specifically for Dove's products. On its website, Dove quotes a typical response from a consumer:



"A tear-free claim is actually quite important to me and probably most other parents; you don't want to cause pain on your kids and surfactants can easily sting the eye."



**Evan, Baby Dove scientist and dad of two.**

Exhibit 7.

117. Dove's misleading affirmative statements (*e.g.*, that the products were hypoallergenic, tear-free, mild, gentle, safe) further obscured what Dove failed to disclose. Thus, reliance upon Dove's misleading and deceptive representations and omissions may be presumed.

118. Dove made the false, deceptive, and misleading representations and omissions, intending Plaintiffs and Class members to rely upon these representations and omissions in purchasing and using one or more Falsely Labeled Products.

119. In making the false, misleading, and deceptive representations and omissions at issue, Dove knew and intended that consumers would purchase the Dove products when consumers would otherwise purchase a competing product or employ an alternate regimen (such as using an oil for moisturizing).

120. In making the false, misleading, and deceptive representations and omissions at issue, Dove also knew and intended that consumers would pay a premium for hypoallergenic products and tear-free products, furthering Dove's private interest of increasing sales of its products and decreasing the sales of products marketed by its competitors.

**J.   Consumers Reasonably Relied**

121.   Consumers frequently rely on ingredient representations and information in making purchase decisions, especially in purchasing personal care products.

122.   When Plaintiffs and the Class members purchased the Falsely Labeled Products, Plaintiffs and the Class members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed, as detailed above.

123.   These misrepresentations were uniform and were communicated to Plaintiffs and every other member of the Class at every point of purchase and consumption.

124.   Plaintiffs and the Class members were among the intended recipients of Dove's deceptive representations and omissions.

125.   Plaintiffs and the Class members reasonably relied to their detriment on Dove's misleading representations and omissions.

126.   Dove's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiffs, the Class members, reasonable consumers, and the general public.

127.   Dove's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Dove's misleading and deceptive representations and omissions may be presumed.

128.   Dove made the deceptive representations and omissions with the intent to induce Plaintiffs and the Class members to purchase the Falsely Labeled Products. Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed.

129.   Dove's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such

information in making purchase decisions. Thus, Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Dove's conduct and the injuries sustained by Plaintiffs and the Class members.

**K.  Dove's Wrongful Conduct Caused Plaintiff's Injury**

130.  As an immediate, direct, and proximate result of Dove's false, misleading, and deceptive representations and omissions, Dove injured Plaintiffs and the Class members in that they:

a. paid a sum of money for a product that was not as represented;

b. paid a premium price for a product that was not as represented;

c. were deprived the benefit of the bargain because the Falsely Labeled Products they purchased were different from what Dove warranted;

d. were deprived the benefit of the bargain because the Falsely Labeled Products they purchased had less value than what was represented;

e. did not receive a product that measured up to their expectations as created by Dove;

f. used (or caused their children to use) a substance that Plaintiffs and the members of the Class did not expect or consent to;

g. without their knowing consent, used (or caused their children to use) a substance that is generally harmful to their health or their children's health;

h. without their knowing consent, used (or caused their children to use) a substance that is a skin sensitizer or skin irritant.

131.  Had Dove not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been injured as listed above. Accordingly, Plaintiffs and the Class members have suffered injury in fact as a result of Dove's wrongful conduct.

132.  Plaintiffs and the Class members all paid money for the Falsely Labeled Products but did not obtain the full value of the advertised products due to Dove's misrepresentations and omissions. Plaintiffs and the Class members purchased, purchased more of, or paid more for, the Falsely Labeled Products than they would have had they known the truth about the Falsely Labeled Products. Accordingly, Plaintiffs and the Class members have suffered injury in fact and lost money or property as a result of Dove's wrongful conduct.

**L.  Dove Benefitted From Its Deceptive Representations and Omissions**

133.  As the intended, direct, and proximate result of Dove's false, misleading, and deceptive representations and omissions, Dove has been unjustly enriched through more sales of Falsely Labeled Products and higher profits at the expense of Plaintiffs and the Class members. As a direct and proximate result of its deception, Dove also unfairly obtained other benefits, including the higher value associated with a "hypoallergenic" and "tear-free" brand and the resulting higher stock value, redirecting sales to it and away from its competitors, and increased sales of its other products.

## III. CLASS ALLEGATIONS

134.  Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated United States residents who purchased the Falsely Labeled Products (as defined herein) (the "Nationwide Class").

135.  Plaintiff Torres also bring this action on behalf of herself and all other similarly situated California residents who purchased the Falsely Labeled Products (as defined herein) (the "California Class").

136.  Plaintiff Wiggins also brings this action on behalf of himself and all other similarly situated New York residents who purchased the Falsely Labeled Products (as defined herein) (the "New York Class").

137.  Excluded from the Class are the judge(s) assigned to this case and their family members; officers and directors of Dove; members of the immediate families of the officers and directors of Dove; Dove's legal representatives, heirs, successors, or assigns; and, any entity in which they have or have had a controlling interest.

138.  Plaintiffs bring each Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

139.  At this time, Plaintiffs do not know the exact number of the Class members; given the nature of the claims and the number of sales that Dove has made of the Products, Plaintiffs believe that members of each Class are so numerous that joinder of all members is impracticable.

140.  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a. whether Dove misrepresented and/or failed to disclose material facts concerning the Falsely Labeled Products;

b. whether Dove's conduct was unfair and/or deceptive; and

c. whether Dove breached an express warranty created through the labeling and marketing of its Falsely Labeled Products.

141.  Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased one or more of Dove's Falsely Labeled Products at a premium price, relying on Dove's false and misleading representations, and Plaintiffs sustained damages from Dove's wrongful conduct.

142.  Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class they seek to represent. Plaintiffs feel that they have been deceived, wish to obtain redress of the wrong, and want Dove to be stopped from perpetrating similar wrongs on others. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, who were the first to publicly uncover the true scope and extent of Dove's wrongs. Plaintiffs have no interests adverse to those of the Class members and will vigorously prosecute this litigation.

143.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Specifically, no Class member has a substantial interest in individually controlling the prosecution of a separate action. The damages suffered by each individual Class member likely will be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Dove's conduct. Thus, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them.

144.   The prerequisites to maintaining a class action for injunctive or equitable relief are met as Dove has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

145.   Upon information and belief, there are no pending lawsuits concerning the products at issue in this case. Concentration of the litigation concerning this matter in this Court is desirable, and the difficulties likely to be encountered in the management of a class action are not great. The resolution of the claims of all Class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

146.   The prosecution of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Dove.

147.   Dove's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Dove's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

148.   The Class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action. Notice to the Class can be made through various means, such as in-store leaflets, website notices, Facebook notices, notices on the labels of the packages, and/or direct notice to those consumers for which Dove knows the e-mail or physical mailing address.

## **CAUSES OF ACTION**

149.   The allegations in each Cause of Action are repeated and realleged in every other Cause of Action as if set forth in full therein.

## COUNT 1

**Breach of Express Warranty**
***On Behalf of the Nationwide Class and, in the alternative,***
***the New York Class, and/or the California Class***

150.   Dove provided Plaintiffs and other members of the Class with written express warranties including, but not limited to, warranties that its Falsely Labeled Products were "hypoallergenic," and additionally, that some of these Falsely Labeled Products were also "tear-free."

151.   These affirmations of fact or promises by Dove relate to the goods and became part of the basis of the bargain.

152.   Plaintiffs and members of each Class purchased the Falsely Labeled Products, believing them to conform to the express warranties.

153.   Dove breached these warranties.

154.   As a proximate result of the breach of warranties by Dove, Plaintiffs and the other members of the Class did not receive goods as warranted.

155.   Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Dove charged for the products.

156.   WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT 2

**Unjust Enrichment**

*On Behalf of the Nationwide Class and, in the alternative,*
*the New York Class, and/or the California Class*

157.  As a result of Dove's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Falsely Labeled Products, Dove was enriched at the expense of Plaintiffs and the other members of the Class through the payment of the purchase price for Dove's Falsely Labeled Products.

158.  Under the circumstances, it would be against equity and good conscience to permit Dove to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Class, in light of the fact that the Falsely Labeled Products purchased by Plaintiffs and the other members of the Class were not what Dove purported them to be. Thus, it would be unjust or inequitable for Dove to retain the benefit without restitution to Plaintiffs and the other members of the Class for the monies paid to Dove for such Falsely Labeled Products.

159.  WHEREFORE, Plaintiffs pray for relief as set forth below.

## <u>COUNT 3</u>

**Violation of New York's General Business Law § 349 and Similar Statutes**
***On Behalf of the Nationwide Class and, in the alternative, the New York Class***

160.  Such acts of Dove, as described above, constitute unlawful, deceptive, and fraudulent business acts and practices.

161.  Dove has violated, and continues to violate, § 349 of the New York General Business Law and similar statutes, which makes deceptive acts and practices unlawful. As a direct and proximate result of Dove's violation of § 349 and similar statutes, Plaintiffs and other members of the Class have suffered damages in an amount to be determined at trial.

162.  Pursuant to New York General Business Law § 349 and similar statutes, Plaintiffs

seek an order of this Court that includes, but is not limited to, an order enjoining Dove from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

163.   Plaintiffs and the other members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

164.   The unfair and deceptive acts and practices of Dove, as described above, present a serious threat to Plaintiffs and the other members of the Class.

165.   WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT 4

**Violation of New York's General Business Law § 350 and Similar Statutes**
***On Behalf of the Nationwide Class and, in the alternative, the New York Class***

166.   Dove's acts constitute unlawful, deceptive, and fraudulent business acts and practices.

167.   Dove's misleading marketing, advertising, packaging, and labeling of the Falsely Labeled Products is false advertising likely to deceive a reasonable consumer. Indeed, Plaintiffs and the other Class members were deceived regarding the characteristics of Dove's Falsely Labeled Products, as Dove's marketing, advertising, packaging, and labeling of the Falsely Labeled Products misrepresents and/or omits the true nature, quality, and/or ingredients of the Falsely Labeled Products.

168.   There is no benefit to consumers or competition from deceptively marketing and labeling products. Indeed, the harm to consumers and competition is substantial.

169.   Plaintiffs and the other members of the Class who purchased the Falsely Labeled Products suffered a substantial injury as alleged herein. Plaintiffs and the other members of the

Class who purchased the Falsely Labeled Products had no way of reasonably knowing that the Falsely Labeled Products they purchased were not as marketed, advertised, packaged, and labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

170.    Dove has violated, and continues to violate, § 350 of the New York General Business Law and similar statutes, which makes false advertising unlawful. As a direct and proximate result of Dove's violation of § 350 and similar statutes, Plaintiffs and other members of the Class have suffered damages in an amount to be determined at trial. Had Plaintiffs and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Dove charged for the products.

171.    Pursuant to New York General Business Law § 350-e and similar statutes, Plaintiffs seek to recover actual damages or $500, whichever is greater, and seek to have these damages trebled.

172.    Pursuant to New York General Business Law § 350 and similar statutes, Plaintiffs also seek an order of this Court that includes, but is not limited to, an order enjoining Dove from continuing to engage in false advertising or any other act prohibited by law.

173.    Plaintiffs and the other members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

174.    The unfair and deceptive acts and practices of Dove, as described above, present a serious threat to Plaintiffs and the other members of the Class.

175.    WHEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT 5**

**Unfair and Deceptive Acts and Practices**
***On Behalf of the Nationwide Class and, in the alternative, the California Class***

176.  This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA") and similar statutes.

177.  Plaintiffs and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d) and similar statutes, because they bought the Falsely Labeled Products for personal, family, or household purposes. Dove is a "person" under Cal. Civ. Code § 1761(c) and similar statutes.

178.  The Falsely Labeled Products are "goods" under Cal. Civ. Code § 1761(a) and similar statutes. Plaintiff, the other members of the Class, and Dove have engaged in "transactions," as that term is defined by California Civil Code § 1761(e) and similar statutes. For the California Class, these transactions all occurred in the State of California.

179.  The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA and similar statutes, and the conduct was undertaken by Dove in transactions intended to result in, and which did result in, the sale of goods to consumers.

180.  Dove's false and fraudulent representations and omissions have violated and continue to violate the CLRA and similar statutes because they extend to transactions that are intended to result, or have resulted, in the sale of goods to consumers, including the Plaintiffs and the Class members.

181.  Dove's conduct violates Cal. Civ. Code § 1770(a)(5) and similar statutes, which prohibits "[r]epresenting that goods . . . have . . . characteristics [or] ingredients . . . which they do not have," and Cal. Civ. Code § 1770(a)(7) and similar statutes, which prohibits:

"[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," causing injury to Plaintiffs and the Class.

182.   As a result of engaging in such conduct, Dove has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9) and similar statutes.

183.   Plaintiffs will serve Dove with notice of its CLRA violations by certified mail, return receipt requested. If, after the requisite thirty days of receiving notice, Dove continues to refuse to correct its wrongs, Plaintiffs will amend this Complaint to include a claim for punitive damages for Dove's CLRA violations.

184.   Plaintiffs and the Class members seek preliminary injunctive relief, and permanent injunctive relief against Dove's unfair and deceptive acts and conduct.

185.   Pursuant to California Civil Code § 1780(a)(2) and (a)(5) and similar statutes, Plaintiffs seek an order of this Court that includes, but is not limited to, an order enjoining Dove from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

186.   Plaintiffs and the other Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

187.   The unfair and deceptive acts and practices of Dove, as described above, present a serious threat to Plaintiffs and the other members of the Class.

188.   WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT 6

**Violations of California's False Advertising Law and Similar Statutes**
***On Behalf of the Nationwide Class and, in the alternative, the California Class***

189.   This cause of action is brought pursuant to California's False Advertising Law

("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* and similar statutes.

190.  Such acts of Dove, as described above, and each of them constitute unlawful, deceptive, and fraudulent business acts and practices.

191.  At all material times, Dove engaged in a scheme of offering the Falsely Labeled Products for sale to Plaintiffs and the other members of the Class by way of distributing within the State of California (as well as within other states) to the public, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), Falsely Labeled Product packaging and labeling, and other promotional materials and offered for sale the Falsely Labeled Products on a nationwide basis, including in California.

192.  The misrepresentations and non-disclosures by Dove of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.* and similar statutes.

193.  Said advertisements and inducements were made within the state of residence and come within the definition of advertising contained in the FAL and similar statutes in that such promotional materials were intended as inducements to purchase Dove's Falsely Labeled Products and are statements disseminated by Dove to Plaintiffs and the other Class members. Dove knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

194.  Consumers, including Plaintiffs and the other Class members, necessarily and reasonably relied on these materials concerning Dove's Falsely Labeled Products. Consumers, including Plaintiffs and the Class members, were among the intended targets of such representations.

195.  The above acts of Dove did and were likely to deceive reasonable consumers, including Plaintiffs and the other members of the Class, by obfuscating the nature, quality, and/or ingredients of the Falsely Labeled Products, in violation of the "misleading" prong of the FAL and similar statutes.

196.  The business practices alleged above are unlawful under the CLRA and similar statutes, which forbids misleading and deceptive advertising.

197.  Plaintiffs and the other members of the Class have suffered injury in fact and have lost money or property as a result of Dove's violations of the FAL and similar statutes.

198.  As a result, Dove has been unjustly enriched at the expense of Plaintiffs and the other members of the Class. Plaintiffs and the Class, pursuant to California Business and Professions Code § 17535 and similar statutes, are entitled to an order of this Court enjoining such future conduct on the part of Dove, and such other orders and judgments which may be necessary to disgorge Dove's ill-gotten gains and restore to any person in interest any money paid for its Falsely Labeled Products as a result of the wrongful conduct of Dove.

199.  WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT 7

**Violation of California's Unfair Competition Law and Similar Statutes**
***On Behalf of the Nationwide Class and, in the alternative, the California Class***

200.  This cause of action is brought pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. and similar statutes.

201.  By committing the acts and practices alleged herein, Dove has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL and similar statutes.

202.  Plaintiffs have standing to pursue this claim as they suffered injury in fact and

have lost money or property as a result of Dove's actions as set forth above. Class members also have suffered injury in fact and have lost money or property as a result of Dove's actions as set forth above.

203.   The violation of any law constitutes an "unlawful" business practice under Cal. Bus. & Prof. Code § 17200 and similar statutes.

204.   Each of Dove's false representations alleged herein violates U.S.C. § 331; Cal. Civ. Code § 1709; Cal. Civ. Code § 1750 *et seq*.; and Cal. Bus. & Prof. Code § 17500 *et seq.,* and similar statutes.

205.   Dove has violated the UCL's and similar statutes' proscription against engaging in unlawful conduct as a result of its violations of (i) the CLRA and similar statutes, as alleged above, and (ii) the FAL and similar statutes, as alleged above.

206.   In addition, Dove has violated the UCL's and similar statutes' proscription against engaging in unlawful conduct as a result of its violations of the Sherman Law, Cal. Health & Safety Code § 109875 *et seq*., and similar statutes, which forbid (1) misbranding of any cosmetic, *id.* at §§ 110398 and 111445, and (2) manufacturing, selling, delivering, holding, or offering for sale any cosmetic that is misbranded or delivering or proffering such for delivery. Cal. Health & Safety Code §§ 110390, 110395, 110398, 110400, 110550, 110585, 110620, 110625, 110660, 110770, 110705, 110740, 110760, 110765, 110770, 111445, and 111450.

207.   The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of

any of the foregoing." Cal. Health & Safety Code § 109995. Dove is a "person" within the meaning of the Sherman Law.

208. As more fully described herein, Dove's misleading marketing, advertising, packaging, and labeling of the Falsely Labeled Products is likely to deceive a reasonable consumer. Indeed, Plaintiffs and the other Class members were unquestionably deceived regarding the characteristics of Dove's Falsely Labeled Products, as Dove's marketing, advertising, packaging, and labeling of the Falsely Labeled Products misrepresents and/or omits the true nature, quality, and/or ingredients of the Falsely Labeled Products.

209. There is no benefit to consumers or competition from deceptively marketing and labeling products. Indeed, the harm to consumers and competition is substantial. Plaintiffs and the other members of the Class who purchased the Falsely Labeled Products suffered a substantial injury as alleged herein.

210. Plaintiffs and the other members of the Class who purchased the Falsely Labeled Products had no way of reasonably knowing that the Falsely Labeled Products they purchased were not as marketed, advertised, packaged, and labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

211. Dove's acts and omissions alleged above constitute unfair business practices under Cal. Bus. & Prof. Code § 17200 and similar statutes because the gravity of the consequences of Dove's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Class. Dove's

false and misleading representations and omissions also violate legislatively declared policy as they have violated numerous state and federal laws. Moreover, the gravity of the harm to Plaintiffs and Class members resulting from Dove's conduct outweighs Dove's legitimate reasons, justifications and/or motives for engaging in such deceptive acts and practices.

212.  Each false and misleading representation and omission constitutes fraudulent business practices under Cal. Bus. & Prof. Code § 17200 and similar statutes because the representations and omissions were false. Even if these representations were true, Dove's representations and deceptive concealment were nonetheless fraudulent under the statute because they were misleading and were likely to and did deceive the reasonable consumer, including Plaintiffs and the Class members.

213.  Dove's violations continue to this day.

214.  Pursuant to California Business and Professions Code § 17203 and similar statutes, Plaintiffs and the other members of the Class seek an order of this Court that includes, but is not limited to, an order enjoining such future conduct on the part of Dove and such other orders and judgments which may be necessary to disgorge Dove's ill-gotten gains and to restore to any person in interest any money paid for Dove's Falsely Labeled Products as a result of the wrongful conduct of Dove.

215.  WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment on behalf of themselves and the proposed Classes providing such relief as follows:

A.        Certification of the Classes proposed herein under Federal Rule of Civil

Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiffs as representatives of the Nationwide Class; appointment of Plaintiff Wiggins as representative of the New York Class; appointment of Plaintiff Torres as representative of the California Class; and appointment of the undersigned counsel as counsel for the Classes;

B.       A declaration that Dove is financially responsible for notifying members of the Classes of the pendency of this suit;

C.       An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Dove as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D.       Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.       Injunctive relief on behalf of the Classes, enjoining Dove's unlawful and deceptive acts;

F.       Statutory damages in the maximum amount provided by law;

G.       Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H.       Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs and the Class members hereby demand a trial by jury.


DATED: March 5, 2021

*s/ Kevin C. Mallon*
FRANCIS MAILMAN SOUMILAS, P.C.
One Liberty Plaza, Suite 2301
New York, NY 10006
T: (917) 410-8290
E: kmallon@consumerlawfirm.com

James A. Francis (*pro hac vice forthcoming*)
Edward H. Skipton (*pro hac vice forthcoming*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 950-8000
E: jfrancis@consumerlawfirm.com
E: eskipton@consumerlawfirm.com

Yvette Golan
THE GOLAN FIRM PLLC
529 14th St. NW Suite 914
Washington, D.C. 20045
Tel: (866) 298-4150, ext. 101
Fax: (928) 441-8250
Email: ygolan@tgfirm.com

*Attorneys for Plaintiffs and the Proposed Class*