UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRAIG WIGGINS, REBECCA TORRES,
and CHARITA HARRELL, on behalf of
themselves and all others similarly situated,

**MEMORANDUM**
**OPINION & ORDER**

Plaintiffs,

21 Civ. 1964 (PGG)

- against -

UNILVER UNITED STATES, INC., dba
DOVE,

Defendant.

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiffs Craig Wiggins, Rebecca Torres, and Charita Harrell bring this class

action against Defendant Unilever United States, Inc., pursuant to the Class Action Fairness Act

of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  (Am. Cmplt. (Dkt. No. 28) ¶ 61)  Plaintiffs allege

violations of Sections 349 and 350 of the New York General Business Law ("GBL") and

violations of similar provisions of California and Pennsylvania law, as well as breach of

warranty and unjust enrichment under New York, Pennsylvania, and California law.  (Id. ¶¶ 171-

255)

Defendant Unilever has moved to dismiss the Amended Complaint, pursuant to

(1) Fed. R. Civ. P. 12(b)(1) for lack of standing; (2) Rule 12(b)(2) for lack of personal

jurisdiction as to Torres and Harrell's claims; and (3) Rule 12(b)(6) for failure to state a claim

upon which relief can be granted.  (Def. Mot. (Dkt. No. 31))

Unilever's motion to dismiss will be granted as set forth below.

## BACKGROUND

### I.      FACTS

Defendant Unilever manufactures, markets, and sells cosmetic products, including certain "[w]ashes[,] and shampoos," under the "Dove" brand name.  Unilever's Dove products are sold throughout the United States.  (See Am. Cmplt. (Dkt. No. 28) ¶¶ 3, 5, 60)  Unilever labels many of its Dove products as "hypoallergenic," and its baby washes and shampoos make a "tear-free" claim.  (Id. ¶¶ 6, 75-77; id., Ex. 1 (Dkt. Nos. 28-1 - 28-7) (product labels))  Two such product labels are shown below:







(Id. ¶¶ 9-10)

Plaintiff Wiggins alleges that he "regularly purchased Dove's Nourishing Body Wash and Dove's Men+Care Body and Face Wash Sensitive Shield" from the Rite Aid store located at 840 Westchester Avenue, Bronx, New York for "approximately thirty-six months . . . every four to six weeks."  (Id. ¶ 21)  Plaintiff Torres alleges that she "regularly purchased Dove's Beauty Bar, Deodorant, Dry Skin Relief Body Lotion, and Shampoo Rich Moisture" from the

Walmart store located at 5200 Van Buren Boulevard, Riverside, California, and from the Food4Less store located at 4250 Van Buren Boulevard, Riverside, California, for "approximately thirty-six months . . . every two weeks." (Id. ¶ 32)  Plaintiff Harrell alleges that she "regularly purchased Dove's Baby Bar Rich Moisture, Lotion Rich Moisture, Night Time Lotion, Nourishing Body Wash, and Tip to Toe Wash Rich Moisture" from the Rite Aid store located at 1105 North 63rd Street, Philadelphia, Pennsylvania for "approximately twenty-four months . . . every two to three weeks." (Id. ¶ 46)

Plaintiffs allege that they have "suffered skin irritation, eye irritation, dermatitis, and/or an allergic skin reaction in the past." (Id. ¶¶ 23, 35, 49)  "Like similarly situated consumers," they do "not know the identity of every ingredient" to which they or their families "are allergic . . . [and do] not know [to] which ingredients" they or their families "may develop an allergy." (Id. ¶¶ 25, 37, 51)  Plaintiffs further allege that consumers seek products labelled as "hypoallergenic" and "tear free" "to avoid developing a skin allergy," "to avoid the inflammatory cascade caused by an unidentified skin allergen," and to avoid causing "their children to suffer eye irritation or damage during bath time." (Id. ¶ 4)  Plaintiffs "saw, relied upon, and reasonably believed the label representation that the products [they purchased] were 'hypoallergenic'" (id. ¶¶ 22, 33, 47), and Plaintiffs Torres and Harrell "saw, relied upon, and reasonably believed the label representation that" certain of the products they purchased were "'tear free.'" (Id. ¶¶ 34, 48)

According to the Amended Complaint, "a hypoallergenic product does not contain skin allergens in an amount that is known to cause an allergic reaction in a significant number of people." (Am. Cmplt. (Dkt. No. 28) ¶¶ 80-81)  Plaintiffs also allege that "[r]easonable consumers believe and expect that a product that is labeled as 'tear-free' does not

contain eye irritants or compounds that can cause eye damage at a concentration that could elicit eye irritation and/or eye damage." (Id. ¶ 89) According to Plaintiffs, Unilever utilizes the same definitions in representing that its products are hypoallergenic and tear-free. (See id. ¶ 83 ("'Look at any of our baby products and you'll see the word 'hypoallergenic' – it's our promise to parents that the entire Baby Dove range has been carefully formulated and tested to ensure it minimizes allergy risks'") (quoting id., Ex. 4 (Dove website) (Dkt. No. 28-10) at 3)[1]; id. ¶ 91 ("[Dove's products have] 'been carefully formulated by our scientists . . . and ophthalmologist-tested to ensure they're mild and won't irritate or sting your baby's eyes.'") (quoting id., Ex 7 (Dove website) (Dkt. No. 28-13) at 3))

The Amended Complaint claims that Unilever's products are not actually hypoallergenic or tear-free because they all contain (1) ingredients that have been shown to "cause serious eye damage lasting longer than 21 days"; or (2) "skin allergens . . . in an amount that has [] been shown to cause an allergic reaction [in] a significant portion of the population" under the United Nation's Globally Harmonized System of Classification and Labeling of Chemicals (the "UN Standards") and as determined by the American Contact Dermatitis Society (the "Dermatitis Society"). (Id. ¶¶ 7-10, 92-115) Under the UN Standards, "a substance is a 'Category 1 skin sensitizer' if it causes an allergic response [in] a significant portion of the population even in extremely small amounts, e.g., ≤ 0.1% intradermal induction dose causes a positive response in more than 30% of guinea pigs in a guinea pig maximization test." (Id. ¶ 93) The Dermatitis Society also publishes a list of "allergens that most frequently cause allergic reactions in human patch tests," which it refers to as "Core Allergens." (Id. ¶ 94)

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

The Amended Complaint alleges that all Dove "hypoallergenic" products "contain chemicals that are recognized by governmental authorities as skin sensitizers (a.k.a. skin allergens) or by the [Dermatitis Society] as a core allergen." (Id. ¶ 102)  These chemicals include "Butylated Hydroxytoluene," "Cetearyl Alcohol," "Cetearyl Glucoside," "DMDM Hydantoin," and "Sodium Laureth Sulfate," among others.  (Id. ¶¶ 102, 104-07 (emphasis omitted))  Indeed, the known skin allergen and eye irritant "cocamidopropyl betaine makes up 1-5% of Baby Dove's Tip to Toe wash, an amount far more than the approximately 0.1% concentration shown to cause an allergic response under [UN Standards] testing." (Id. ¶¶ 102-03, 108)  Because the Dove products contain these chemicals, they are not hypoallergenic and "tear-free," and the products' labels are accordingly misleading.  (Id. ¶¶ 97-101)

The Amended Complaint goes on to allege that "Dove has based its brand as being a trustworthy expert in skin care and baby care, offering information and advice to consumers desiring safe products for sensitive skin." (Id. ¶ 5)  Plaintiffs further allege that "[c]onsumers lack the ability to test . . . whether an ingredient is an allergen or an irritant" and that accordingly "[r]easonable consumers [] must and do rely on the product company to honestly report the known characteristics of ingredients that are in a product." (Id. ¶¶ 13-14)

Plaintiffs assert that had they "known at the time that [the Dove] products contain[] skin sensitizers or [] allergens" or "substances that cause skin or eye damage" they "would not have purchased the[] products."  They further allege that they (1) "purchased, purchased more of, or paid more for, [the Dove] products than [they] would have had [they] known that the products were not hypoallergenic, as promised"; (2) "paid a price premium for a product that was not as represented"; and (3)"were deprived of the benefit of the bargain because

5

[the Dove products] had less value than what was represented." (Id. ¶¶ 27-29, 38, 40-42, 52, 54-56, 150)

Finally, Plaintiffs allege that "[i]f Dove's products were reformulated such that its representations were truthful, Plaintiff[s] [] would consider purchasing Dove's products again in the future." (Id. ¶¶ 30, 44, 58)

## II.   PROCEDURAL HISTORY

The Complaint was filed on March 5, 2021. (Cmplt. (Dkt. No. 1)), and the Amended Complaint was filed on August 18, 2021. (Am. Cmplt. (Dkt. No. 28)).  On November 3, 2021, Unilever moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6).  (Def. Mot. (Dkt. No. 31))

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)); see also Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d

Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)) ("The plaintiff bears the

burden of proving subject matter jurisdiction by a preponderance of the evidence."). "Under

Rule 12(b)(1), even 'a facially sufficient complaint may be dismissed for lack of subject matter

jurisdiction if the asserted basis for jurisdiction is not sufficient.'" Castillo v. Rice, 581 F. Supp.

2d 468, 471 (S.D.N.Y. 2008) (quoting Frisone v. Pepsico, Inc., 369 F. Supp. 2d 464, 469

(S.D.N.Y. 2005)).

   In considering a Rule 12(b)(1) motion, a court "must accept as true all material

factual allegations in the complaint." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d

Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to

resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements

contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170

(2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (citing Makarova, 201 F.3d at 113) ("In resolving a

motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may

consider evidence outside the pleadings."). In resolving a Rule 12(b)(1) motion, a court may

also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03

Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v.

City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

  **B.**  **Federal Rule of Civil Procedure 12(b)(2)**

   "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metro.

Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). To survive a motion to

dismiss, a plaintiff need only provide "legally sufficient allegations of jurisdiction." Id. A

plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate

trier of fact, would suffice to establish jurisdiction over the defendant." Id. at 567 (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  Plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)). Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings.  See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013).

      **C.**      **Federal Rule of Civil Procedure 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and a plaintiff's claims must be "plausible on [their] face," id. at 570.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," id. at 570. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers, 282 F.3d at 153; Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

## II.   STANDING

Defendant Unilever has moved to dismiss pursuant to Rule 12(b)(1) for lack of standing, arguing that (1) the Amended Complaint does not adequately allege an injury-in-fact; and (2) Plaintiffs lack standing to seek injunctive relief.

### A.   Applicable Law

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise." United States v. Suarez, 791 F.3d 363, 366 (2d

Cir. 2015) (internal quotation marks and citation omitted). To establish constitutional standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). The plaintiff bears the burden of establishing the elements of standing, Spokeo, 578 U.S. at 338 (citation omitted), and "at the pleading stage[] the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

The requisite "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized[;] . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). A plaintiff must "demonstrate standing separately for each form of relief sought," TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)), and a plaintiff "seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury," Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187 (2d Cir. 2013). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016). Finally, "[a] plaintiff seeking to represent a class must personally have standing." Id. (citing Lewis v. Casey, 518 U.S. 343, 357 (1996)).

B.      **Analysis**

1.      **Standing to Seek Money Damages**

Unilever contends that Plaintiffs have not pled an injury-in-fact.  (See Def. Br.

(Dkt. No. 32) at 13-15)

Economic injuries are sufficient to meet the injury-in-fact requirement for

purposes of standing.  See, e.g., Transunion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) ("The

most obvious [concrete injuries under Article III] are traditional tangible harms, such as . . .

monetary harms."); Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 85

(2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing.");

Alaska Elec. Pension Fund v. Bank of Am. Corp., 2016 WL 1241533, at *4 (S.D.N.Y. Mar. 28,

2016) (noting that "'paid too much' or 'received too little'" claims constitute "classic economic

injury-in-fact").  A plaintiff can show an economic injury-in-fact by alleging "an overpayment,

or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive

practice" Izquierdo v. Mondelez Int'l Inc., 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016), or

by alleging that she "spent money in the transaction that she otherwise would not have spent had

she known the truth about Defendant's advertising claims."  Richardson v. Edgewell Pers. Care,

LLC, 2023 WL 1109646, at *3 (S.D.N.Y. Jan. 30, 2023).

Here, Plaintiffs allege that they paid a "premium" for Dove products marketed as

"hypoallergenic" and "tear free," and that they would not have purchased the products had they

known they were not hypoallergenic.  (Pltf. Opp. (Dkt. No. 36) at 12; Am. Cmplt. (Dkt. No. 28)

¶¶ 12, 150 ("By deceiving consumers about the nature, quality, and/or ingredients of its products,

[Unilever] is able to command a premium price."); id. ¶¶ 26-28, 38-41, 52-55, 133, 177 ("Had

Plaintiff[s] [] known at the time of [their] purchases that these products were not hypoallergenic [and/or tear-free] as promised, [they] would not have purchased [them.]"))

Unilever contends that Plaintiffs have not pled an injury-in-fact because they "received precisely what they paid for," in that they bought "hypoallergenic" and "tear free" products and do not allege that "they or their family members suffered any irritation or allergic reaction following their use of the [Dove products], let alone as a result of their use of the [Dove products]." (Def. Br. (Dkt. No. 32) at 14-15 (emphasis omitted))  Unilever cites to out-of-circuit authority in support of its argument that Plaintiffs have not adequately alleged injury. Defendant's cases are not persuasive, either because they are not on point or because they reflect flawed reasoning.

In <u>Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.</u>, a Central District of California court dismissed plaintiffs' claims that they had "overpaid for their vehicles," because plaintiffs had not "identified any false representations about the automatic pre-collision braking feature made by [the defendant]." <u>Tae Hee Lee</u>, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014). Likewise, in <u>Travelers Indem. Co. v. Cephalon, Inc.</u>, an Eastern District of Pennsylvania court dismissed an "overpayment" claim where plaintiff failed to "plead facts to show that the drug [at issue] was prescribed or purchased in reliance on untrue statements or misrepresentations about the drug's attributes." <u>Travelers</u>, 32 F. Supp. 3d 538, 548 (E.D. Pa. 2014), <u>aff'd</u>, 620 F. App'x 82 (3d Cir. 2015).  These cases have no application here, given Plaintiffs' allegations that (1) Unilever markets certain Dove products as "hypoallergenic" and "tear free" (Am. Cmplt. (Dkt. No. 28) ¶¶ 75-79); (2) these representations are false and misleading because the products contain known allergens and eye irritants (<u>id.</u> ¶¶ 80-132); (3) Plaintiffs relied on these statements when purchasing Defendant's products (<u>id.</u> ¶¶ 133-49); and (4) Defendant's misrepresentations

caused Plaintiffs to purchase the products when they otherwise would not have, or to pay more for these products than they otherwise would have.  (Id. ¶ 150).[2]

Defendant also cites Brito-Munoz v. Walmart, Inc., 2022 WL 2111344, at *1 (M.D. Pa. June 10, 2022).  (See Def. June 17, 2022 Ltr. (Dkt. No. 37) at 1)  As here, the plaintiffs in that case alleged that certain Walmart cosmetic products were marketed as "hypoallergenic," when in fact they "contain 'a significant array and substantial amount of known skin sensitizers (allergens).'"  Brito-Munoz, 2022 WL 2111344, at *1 & n.3.  Plaintiffs alleged "injury because they paid a sum of money for a product that was not as represented; paid a premium price for a product that was not as represented; were deprived the benefit of the bargain because the falsely labeled products they purchased were different from what Walmart warranted; and were deprived [of] the benefit of the bargain because the falsely labeled products they purchased had less value than what was represented."  Id.

A Middle District of Pennsylvania court concluded that the "amended complaint reads more like after-the-fact buyers' remorse than genuine economic injury."  Id. at *5. Because plaintiffs did not "allege that they or their children developed an allergy or . . . [suffered] a physical injury," the court found that "the products [p]laintiffs purchased and consumed lived up to their expectations."  Id.  The court further concluded that plaintiffs had not adequately pled a "premium price" injury because plaintiffs had not alleged that the defendant's "hypoallergenic products were marketed as 'superior' to other Walmart brand products [that did

---

[2] Defendant also cites Moreno v. Vi-Jon, Inc., where plaintiff sued a hand sanitizer manufacturer that had represented that its product killed "99.99% of germs."  Plaintiff alleged that this assertion was "mathematically" and "logically" impossible.  Moreno, 2021 WL 807683, at *4 (S.D. Cal. Mar. 3, 2021).  In dismissing plaintiff's claim, the court ruled that plaintiff had "only pled a conjectural and hypothetical injury" rather than a "concrete and particularized injury." (Id.)  This case does not address the overpayment and premium price theories of standing alleged here, and accordingly is not persuasive.

not contain the hypoallergenic claim], or that products not labeled as hypoallergenic were less expensive than those with the hypoallergenic label." Id. Brito-Munoz's reasoning is not persuasive.

Courts in this Circuit have consistently ruled that plaintiffs satisfy the requirements of Article III standing when they plead that defendants' misrepresentations caused them to purchase a product that they otherwise would not have purchased. See, e.g., Morrow v. Ann Inc., 2017 WL 363001, at *3 (S.D.N.Y. Jan. 24, 2017) ("Plaintiffs allege that they would not have bought the products absent Ann's advertising, which caused them to spend money they would otherwise not have spent. This injury is concrete, and while it may ultimately prove insufficient to justify relief under the statutes at issue, it is sufficient to confer constitutional standing."); Brown v. Kerry Inc., 2021 WL 5446007, at *3 (S.D.N.Y. Nov. 22, 2021), report and recommendation adopted, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) ("Allegations that a plaintiff would not have bought the product . . . had she known the truth behind the misrepresentation satisfies an actual injury claim at the motion to dismiss stage."); Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) ("Allegation[s] that a plaintiff [either] would not have purchased a product . . . comfortably satisf[y] the injury-in-fact prong of Article III standing"; Borenkoff v. Buffalo Wild Wings, Inc., 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018) (Plaintiff "sufficiently alleges that she would not have purchased defendants' food items if she knew [their ingredients] . . . . There is some 'concrete and particularized' injury in paying for one item and receiving another, even if you ultimately receive the 'benefit of your bargain' from a purely objective economic standpoint.").

The Court concludes that Plaintiffs have standing to seek monetary relief.

2.      **Standing to Seek Injunctive Relief**

To demonstrate injury-in-fact when seeking injunctive relief, "a plaintiff cannot

rely on a past injury alone," Buonasera, 208 F. Supp. 3d at 564 (quoting City of Los Angeles v.

Lyons, 461 U.S. 95, 101 (1983)), but must establish "a 'real or immediate threat' of [future]

injury," Nicosia, 834 F.3d at 239 (quoting Lyons, 461 U.S. at 111-12).  "'The Supreme Court has

repeatedly reiterated that threatened injury must be certainly impending to constitute injury in

fact, and that allegations of possible future injury are not sufficient.'" Daniel v. Tootsie Roll

Indus., 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018) (quoting Am. Civil Liberties Union v.

Clapper, 785 F.3d 787, 800 (2d Cir. 2015) (collecting cases)).

Plaintiffs who assert claims premised on a product's false or misleading labelling

can rarely demonstrate a threat of future injury:

> past purchasers of a consumer product who claim to be deceived by that product's
> packaging – like the purchasers of Barilla pasta here – have, at most, alleged a
> past harm.  Such a past harm is of the kind that is commonly redressable at law
> through the award of damages, which, it should be noted, is what Plaintiffs
> primarily sought in their complaint.

Berni v. Barilla S.p.A., 964 F.3d 141, 147 (2d Cir. 2020).

Plaintiffs whose claims are premised on a product's false or misleading labelling

can generally not credibly plead a threat of future harm because they "'will not again be under

the illusion' that caused their initial harm." Quintanilla v. WW Int'l, Inc., 541 F. Supp. 3d 331,

341 (S.D.N.Y. 2021) (quoting Berni, 964 F.3d at 147).  "'[I]nstead, next time they buy [the

product], they will be doing so with exactly the level of information that they claim they were

owed from the beginning.'" Id. (quoting Berni, 964 F.3d at 148).  "Thus, courts have held,

following Berni, that past purchasers generally lack standing to seek an injunction because it is

unlikely that they, or any class they seek to represent, will suffer the same harm again." Id.

at 341 (citing Campbell v. Whole Foods Mkt. Grp., 516 F. Supp. 3d 370, 395 (S.D.N.Y. 2021)

("If [plaintiff] does purchase the product again in the future, she will not be harmed in a similar way, because any future purchase will be made with knowledge of the product's ingredients, and because she will only purchase the product if the allegedly misleading representations of which she complains are fixed.  Therefore, Plaintiff lacks standing.").[3]

Under Berni, Plaintiffs lack standing to assert claims for injunctive relief.  While Plaintiffs allege that they purchased Unilever's Dove products in reliance on representations that the Dove products are hypoallergenic and tear-free (see Am. Cmplt. (Dkt. No. 28) ¶¶ 141-49), Plaintiffs maintain that they have since learned that those products contain allergens and eye irritants, and thus do not meet the reasonable consumer's definition of "hypoallergenic."  (Id. ¶¶ 92-115)  It follows from these allegations that if Plaintiffs purchase the Dove products at issue in the future, they "'will not [] be under the illusion' that caused their initial harm [and will] 'instead[] . . . be doing so with exactly the level of information that they claim they were owed from the beginning.'"  Quintanilla, 541 F. Supp. 3d at 341 (quoting Berni, 964 F.3d at 147).

Moreover, the Amended Complaint's allegations that if Unilever's Dove "products were reformulated such that its representations were truthful, [Plaintiffs] would consider purchasing Dove's products in the future" (Am. Cmplt. (Dkt. No. 28) ¶¶ 30, 44, 58), are not sufficient to establish standing.  Such hypothetical future purchases do not demonstrate the "real or immediate threat" of injury necessary to pursue injunctive relief.  Nicosia, 834 F.3d at 239; see also Gordon v. Target Corp., 2022 WL 836773, at *8 (S.D.N.Y. Mar. 18, 2022)

---

[3]  While "Berni itself addressed only whether an entire certified class of past purchasers could show the requisite likely future harm to support common treatment under Federal Rule of Civil Procedure 23," Quintanilla, 541 F. Supp. 3d at 342 & n.3, "district courts have uniformly applied Berni in the context of motions to dismiss" for lack of standing to seek injunctive relief. Campbell, 516 F. Supp. 3d at 396; see also, e.g., Patellos v. Hello Prod., LLC, 523 F. Supp. 3d 523, 538 (S.D.N.Y. 2021); Rivera v. Navient Sols., LLC, 2020 WL 4895698, at *14 (S.D.N.Y. Aug. 19, 2020).

("[Plaintiff's] allegation that she 'intends to, seeks to, and will purchase the product again when she can do so with the assurance that the [p]roduct's representations about its components and ingredients are consistent with its representations,' fails to demonstrate that she is likely to suffer future harm."); Patellos, 523 F. Supp. 3d at 538 ("[A] plaintiff who merely alleges that she 'would purchase a product if re-engineered or re-marketed does not show a real or immediate threat of future injury.'") (quoting Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020)).

Plaintiffs ignore Berni and instead urge this Court to follow the Ninth Circuit's decision in Davidson v. Kimberly-Clark Corp., 889 F.3d 956 (9th Cir. 2018) and certain pre-Berni cases from this District.  (See Pltf. Opp. (Dkt. No. 36) at 14-15).  They argue that if "'injunctive relief [is] unavailable to a consumer who learns after purchasing a product that the product's label is false, [the various] consumer protection laws [under which Plaintiffs bring this suit] would be effectively gutted.'"  (See id. at 16 (quoting Davidson v. Kimberly-Clark Corp., 873 F.3d 1103, 1116 (9th Cir. 2017)))  In Berni, however, "the Circuit expressly considered those concerns, yet 'went on to reject the policy-based rationale that underpins most of the cases on which Plaintiff relies.'"  Quintanilla, 541 F. Supp. 3d at 343 (quoting Campbell, 516 F. Supp. 3d at 395); see also Berni, 964 F.3d at 148-49 (rejecting policy-based argument that courts should "creat[e] an exception to the [rule that] . . . [w]here there is no likelihood of future harm, there is no standing to seek an injunction").

The Court concludes that Plaintiffs lack standing to seek injunctive relief. Accordingly, their claim for injunctive relief will be dismissed.

### III.    PERSONAL JURISDICTION OVER UNILEVER FOR PURPOSES OF OUT OF STATE PLAINTIFF'S CLAIMS

Unilever claims that this Court lacks personal jurisdiction over Unilever for purposes of Plaintiffs Torres and Harrell's claims, because these plaintiffs do not allege sufficient contacts between Unilever and New York arising out of or related to their claims. (Def. Br. (Dkt. No. 32) at 31)

### A.    Applicable Law

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question." Cohen v. Facebook, Inc., 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017) (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)).

To exercise personal jurisdiction over a defendant, "there must be a statutory basis for personal jurisdiction that renders [] service of process effective[,] . . . [and] the exercise of personal jurisdiction must comport with constitutional due process principles." Waldman v. Palestine Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012)).  As to the constitutional inquiry, courts must determine both "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant and whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case." Johnson v. UBS AG, 791 Fed. Appx. 240, 242 (2d Cir. 2019) (internal quotation marks omitted) (citing Waldman, 835 F.3d at 331).

"In analyzing the minimum contacts requirement, courts have distinguished between two bases for personal jurisdiction:  specific jurisdiction and general jurisdiction."

Johnson, 791 Fed. Appx. at 242.  Here, Unilever is incorporated in Delaware (Dkt. No. 12) and has its principal place of business in New Jersey.  (Am. Cmplt. (Dkt. No. 28) ¶ 60).  Moreover, Plaintiffs do not allege that Unilever's contacts with New York are "so 'continuous and systematic' as to render [it] essentially at home" in New York.  Daimler AG v. Bauman, 571 U.S. 117, 139 (2014).  Accordingly, Unilever is not subject to general jurisdiction in New York, and this Court must go on to consider whether it can exercise specific jurisdiction over the claims brought by named plaintiffs who do not reside in New York.

Three conditions must be met for the exercise of specific jurisdiction to be proper: (1) "'the defendant must have purposefully availed itself of the privileges of conducting activities within the forum State or have purposefully directed its conduct into the forum State'"; (2) "'the plaintiff's claims must arise out of or relate to the defendant's forum conduct'"; and (3) "'the exercise of jurisdiction must be reasonable under the circumstances.'"  U.S. Bank N.A. v. Bank of America N.A., 916 F.3d 143, 150 (2d Cir. 2019) (quoting Bristol-Myers Squibb Co. v. Superior Court of California, 582 U.S. 255, 272 (2017)).  Where there is no connection between the forum and the underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  See Bristol-Myers, 582 U.S. at 264 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 931 (2011)).

## B.   Analysis

Plaintiffs do not contend that Torres and Harrell's claims "arise out of or relate to the [D]efendant's forum conduct."  U.S. Bank N.A., 916 F.3d at 150.  (See Am. Cmplt. (Dkt. No. 28) ¶ 32  ("Torres . . . at all times material hereto, was a citizen of the State of California . . . [and] regularly purchased Dove [products] . . . from [a] Walmart . . . [in] Riverside[,] [California]."); id. ¶ 46 ("Harrell . . . at all times material hereto, was a citizen of the State of

Pennsylvania . . . [and] regularly purchased Dove [products] . . . from [a] Rite Aid . . . [in] Philadelphia[,] [Pennsylvania]."); Pltf. Opp. (Dkt. No. 36) at 33-34)  Plaintiffs instead argue that this Court has "pendent personal jurisdiction" over Torres and Harrell's claims because it has personal jurisdiction over Wiggins' claims, and "it can 'hardly be said to be undue' to exercise personal jurisdiction over a global company that intentionally cultivates a nationwide market." (Pltf. Opp. (Dkt. No. 36) at 34 (quoting Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 141 S.Ct. 1017, 1022-23, 1030 (2021)))

"[A] court may exercise pendent personal jurisdiction 'over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises from out of a common nucleus of operative facts with a claim in the same suit over which a court does have personal jurisdiction.'" Truck-Lite Co., LLC v. Grote Indus., Inc., 2020 WL 5793297, at *2 (W.D.N.Y. Sept. 29, 2020) (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004)).  Pendent personal jurisdiction, however, "'traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant.'" Daniel v. Tootsie Roll Indus., LLC, 2018 WL 3650015, at *8 (S.D.N.Y. Aug. 1, 2018) (quoting Bayliss v. Marriott Corp., 843 F.2d 658, 663-64 (2d Cir. 1988)).

Plaintiffs have not cited to any "authority approving of the non-traditional application of pendent personal jurisdiction sought here, where a foreign defendant, subject to specific personal jurisdiction with respect to state law claims brought pursuant to the law of the

forum state, contests pendent personal jurisdiction with respect to state law claims brought by

other plaintiffs pursuant to the laws of non-forum states."[4] Id. at *8.

> "[W]here each plaintiff's claim is predicated on the law of the particular state
> where he or she purchased [a product] and the claims of the other plaintiff[] as
> alleged remain unrelated to anything that transpired in [New York], imposing
> personal jurisdiction for all of the claims because specific jurisdiction may lie as
> to [the in-state defendant's] claims would run afoul of the traditional notions of
> fair play and substantial justice that form the bedrock of any court's personal
> jurisdiction analysis."

Id. (quoting Famular v. Whirlpool Corp., 2017 WL 2470844, at *6 (S.D.N.Y. June 7, 2017).

Plaintiff's arguments regarding the exercise of pendent personal jurisdiction here

also cannot be reconciled with the Supreme Court's reasoning in Bristol Meyers Squibb:

> As noted, the nonresidents were not prescribed Plavix in California, did not
> purchase Plavix in California, did not ingest Plavix in California, and were not
> injured by Plavix in California. The mere fact that other plaintiffs were
> prescribed, obtained, and ingested Plavix in California – and allegedly sustained
> the same injuries as did the nonresidents – does not allow the State to assert
> specific jurisdiction over the nonresidents' claims. As we have explained, "a
> defendant's relationship with a [plaintiff or] third party, standing alone, is an
> insufficient basis for jurisdiction."

Bristol-Myers Squibb, 582 U.S. at 265 (emphasis in original) (quoting Walden v. Fiore, 571 U.S.

277, 286 (2014)); see also Greene v. Mizuho Bank, Ltd., 289 F. Supp. 3d 870, 875 (N.D. Ill.

---

[4] In support of their personal jurisdiction argument, Plaintiffs cite Truck-Lite Co., LLC v. Grote
Indus., Inc., 2020 WL 5793297, at *2 (W.D.N.Y. Sept. 29, 2020) and Hanly v. Powell Goldstein,
L.L.P., 290 F. App'x 435, 438 (2d Cir. 2008). (Pltf. Opp. (Dkt. No. 36) at 33)  These cases are
not on point, however, because they involve the application of pendent personal jurisdiction over
claims brought by an out-of-state plaintiff where the court has personal jurisdiction over at least
one of the out-of-state plaintiff's claims. See Truck-Lite Co., 2020 WL 5793297, at *1 ("[T]he
Court has personal jurisdiction over Grote for Truck-Lite's strobe and stop/tail/turn lamp claims
under New York's long-arm statute. . . . [T]he Court may, and should, [also] exercise pendent
personal jurisdiction over Grote for Truck-Lite's [other claims for which minimum contacts do
not exist].");  Hanly, 290 F. App'x at 438 ("[O]nce a defendant properly is brought before a
district court on a claim covered by [New York's long-arm statute,] the court may entertain
claims [brought by the same plaintiff or plaintiffs] that are not expressly covered by the long-arm
statute, so long as they derive from the same nucleus of operative fact as claims that are.").
Here, this Court does not have personal jurisdiction over any of Torres and Harrell's claims.

2017) ("[E]ven if the doctrine at one time permitted the court to exercise [pendent] personal jurisdiction over a claim like [out-of-state plaintiff's claim], it no longer does in light of <u>Bristol-Myers</u>").[5]

Accordingly, Torres and Harrell's claims against Unilever under California and Pennsylvania law, including Torres and Harrell's unjust enrichment and breach of warranty claims (Counts 1, 2, 5, 6, 7, and 8), are dismissed for lack of personal jurisdiction.

*          *          *          *

Given the dismissal of Torres and Harrell's claims, only Wiggins' claims against Unilever under New York's General Business Law §§ 349 and 350 and for breach of express warranty and unjust enrichment remain. The Court considers each of these claims below.

## IV.   <u>WIGGINS' NEW YORK GENERAL BUSINESS LAW CLAIMS</u>

Unilever contends that "Plaintiffs' statutory and common law claims are [] meritless because they fail to plausibly allege that reasonable consumers (i) shared Plaintiffs' implausible interpretations of Unilever's 'hypoallergenic' and 'tear-free' representations, or (ii) suffered any injury as a result of the challenged labeling." (Def. Br. (Dkt. No. 32) at 16)

---

[5] Plaintiffs' reliance on <u>Ford Motor Co.</u>, 141 S.Ct. at 1022-23 (<u>see</u> Pltf. Opp. (Dkt. No. 36) at 34) is misplaced. That case concerned Minnesota and Montana courts' exercise of personal jurisdiction over Ford with respect to plaintiffs who had purchased and used Ford's vehicles within those states' borders. As Justice Alito noted in concurrence: "<u>Their</u> residents, while riding in vehicles purchased within <u>their</u> borders, were killed or injured in accidents on <u>their</u> roads. Can anyone seriously argue that requiring Ford to litigate these cases in Minnesota and Montana would be fundamentally unfair?" <u>Ford Motor Co.</u>, 141 S.Ct. at 1032 (Alito J., concurring in judgment) (emphasis in original). No comparable facts have been alleged here.

A.    **Applicable Law**

GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," while GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. GBL §§ 349, 350.

To state a claim under either section, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Wynn v. Topco Assocs., LLC, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)).  To survive a motion to dismiss, "'plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.'" Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (alteration omitted) (quoting Sarr v. BEF Foods, Inc., 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). Rather, they must "'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" Id. (quoting Sarr, 2020 WL 729883, at *3).  Finally, "'[a]lthough the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" Id. (quoting Wynn v. Topco Assocs., LLC, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021)).

"When analyzing whether a label is deceptive, courts do not view the label in isolation.  Instead, '[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'" Pichardo v. Only What You Need, Inc., 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (quoting Wurtzburger v. Kentucky Fried Chicken,

2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)).  "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim."  Reyes v. Crystal Farms Refrigerated Distrib. Co., 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (quoting Davis v. Hain Celestial Grp., Inc., 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018)).

### B.    Analysis

#### 1.    The Meaning of "Hypoallergenic" and "Tear Free"

The Dove products at issue are labelled as "hypoallergenic," but the Amended Complaint contends that the Dove products do not meet a reasonable consumer's understanding of this term.  (Am. Cmplt. (Dkt. No. 28) ¶¶ 6, 77, 80-81, 92-115)  According to the Amended Complaint, a reasonable consumer would believe that "a hypoallergenic product does not contain skin allergens in an amount that is known to cause an allergic reaction in a significant number of people."  (Am. Cmplt. (Dkt. No. 28) ¶ 80)

Citing the Merriam-Webster Dictionary, however, Defendant argues that "'[h]ypoallergenic' is a commonly used term that is defined as 'having little likelihood of causing an allergic response.'"  (Def. Br. (Dkt. No. 32) at 19) (quoting Hypoallergenic, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/hypoallergenic (last visited July 24, 2023).  Defendant further notes that "the FDA – which has jurisdiction over cosmetics labeling (see 21 U.S.C. § 393(b)(2)(D)) – has explained that 'hypoallergenic' cosmetics are those that 'manufacturers claim produce fewer allergic reactions than other cosmetic products,' and has [stated] that 'there is no such thing as a "nonallergenic" cosmetic.'"  (Id. at 19 (emphasis

omitted) (quoting Hypoallergenic Cosmetics, Food and Drug Admin., https://www.fda.gov/

cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics (last updated on Feb. 25, 2022))[6]

---

[6] In <u>Almay v. Califano</u>, 569 F.2d 674 (D.C. Cir. 1977), the D.C. Circuit rejected the FDA's efforts to regulate use of the term "hypoallergenic" in the cosmetics context:

> On February 25, 1974, appellee Food and Drug Administration (FDA) in accordance with 21 U.S.C. ss 321(m), 362(a), and 371(a), initiated informal rulemaking proceedings by publishing a proposed regulation governing hypoallergenic cosmetics, under which:
>
>> A cosmetic may be designated in its labeling by words that state or imply that the product or any ingredient thereof is "hypoallergenic" if it has been shown by scientific studies that the relative frequency of adverse reactions in human subjects from the test product is significantly less than the relative frequency of such reactions from each reference product(s). (39 F.R. 7291.)
>
> The lynch-pin of the regulation was its requirement for employment of "comparison testing," <u>i.e.</u>, for testing the labeled product against "reference product(s)" defined in the regulation as "similar-use competitive products in the same cosmetic product category" and representing a market share of 10%.
> . . . .
> The only bases in the administrative record for the Commissioner's definition are conclusions drawn from a dictionary that does not employ the chosen definition, an AMA report recommending against any use of "hypoallergenic," and an FTC survey, the unreliability of which is apparent on its face and indicated by its sponsor.
>
> Under such circumstances we are compelled to find that the action of the Commissioner was arbitrary and capricious.

<u>Almay</u>, 569 F.2d at 675, 682-83.

After <u>Almay</u>, the FDA abandoned its effort to regulate use of the term "hypoallergenic" in connection with cosmetics. Indeed, the FDA has stated that

> [t]here are no Federal standards or definitions that govern the use of the term "hypoallergenic." The term means whatever a particular company wants it to mean. Manufacturers of cosmetics labeled as hypoallergenic are not required to submit substantiation of their hypoallergenicity claims to FDA. The term "hypoallergenic" may have considerable market value in promoting cosmetic products to consumers on a retail basis, but dermatologists say it has very little meaning.

<u>See</u> Hypoallergenic Cosmetics, Food and Drug Admin., https://www.fda.gov/cosmetics /cosmetics-labeling-claims/hypoallergenic-cosmetics (last updated on Feb. 25, 2022).

Plaintiffs rely on Rugg v. Johnson & Johnson ("Rugg II), 2019 WL 119971 (N.D. Cal. Jan. 7, 2019) in presenting their proposed definition of "hypoallergenic." (See Pltf. Opp. (Dkt. No. 36) at 18)  In Rugg II, the court found the following alleged consumer understanding of "hypoallergenic" "reasonable and plausible":  "A reasonable consumer believes that a product labeled as 'hypoallergenic' does not contain skin allergens in an amount that can be reasonably be expected to induce an allergic response in a significant number of people." Rugg II, 2019 WL 119971 at *4.

In arguing that "hypoallergenic" is commonly used and understood to mean "having little likelihood of causing an allergic response" (Def. Br. (Dkt. No. 32) at 18-19) Unilever cites McAteer v. Target Corp., 2018 WL 3597675, at *5 (D. Minn. July 26, 2018), Souter v. Edgewell Pers. Care Co., 542 F. Supp. 3d 1083, 1095 (S.D. Cal. 2021), and Rugg v. Johnson & Johnson ("Rugg I"), 2018 WL 3023493, at *1 (N.D. Cal. June 18, 2018).  (Id. at 20) Defendant cites these same cases in support of its argument that "[n]umerous courts have dismissed false advertising claims arising from the labeling of 'hypoallergenic' cosmetics where plaintiffs interpret that term in ways that deviate from the dictionary definition or the definition adopted by the FDA."  (Id.)

As an initial matter, and as discussed above, no definition of "hypoallergenic" has been adopted by the FDA.  To the contrary, the FDA has stated that "[t]here are no Federal standards or definitions that govern the use of the term 'hypoallergenic' [in the context of cosmetics]."  Hypoallergenic Cosmetics, Food and Drug Admin., https://www.fda.gov /cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics (last updated on Feb. 25, 2022). Moreover, Defendant has not demonstrated that there is one generally accepted dictionary definition of "hypoallergenic."

The case law cited by Defendant is likewise not persuasive.  McAteer is of no use here because it does not discuss any definition or common consumer understanding of "hypoallergenic."  In that case, plaintiff alleged that defendant's use of "hypoallergenic" was misleading because – after using the product – "she developed an allergic reaction."  McAteer, 2018 WL 3597675, at *4.  The court concluded that plaintiff failed to state a claim, because "[n]othing in Plaintiff's allegations identify how or why the Makeup Remover Wipes are more likely to cause allergic reactions than competing products."  Id. at *5.

In Rugg I, 2018 WL 3023493, at *8, the court granted a motion to dismiss where plaintiffs alleged that "a hypoallergenic product [is a product that] does not contain any skin sensitizers."  Id. at *2.  Plaintiffs later amended their complaint to allege that a hypoallergenic product "does not contain skin allergens in an amount that can be reasonably be expected to induce an allergic response in a significant number of people."  Rugg II, 2019 WL 119971 at *4.  As noted above, the court found that definition "reasonable and plausible" and denied a motion to dismiss the amended complaint.  Id.

Souter involves use of the term "hypoallergenic" in connection with hand wipes.  Relying on Rugg I, the Souter court concluded that "[n]o reasonable consumer would read 'hypoallergenic' . . . to mean that it is completely free of ingredients that can cause an allergic reaction."  Souter, 542 F. Supp. 3d at 1095.  The Souter court also found it "implausible to argue that a reasonable consumer would take 'hypoallergenic' and 'gentle' to mean that the hand wipes pose no possible risk of skin irritation as opposed to posing a lower risk."  Id. (emphasis in original).  Here, however, Plaintiffs' proposed definition of "hypoallergenic" does not require that a product be "completely free of ingredients that can cause an allergic reaction."  (See Am. Cmplt. (Dkt. No. 28) ¶ 80 ("Reasonable consumers believe and expect that a hypoallergenic

product does not contain skin allergens in an amount that is known to cause an allergic reaction in a significant number of people.")

In sum, Defendant has not demonstrated that Plaintiffs' proposed consumer understanding of "hypoallergenic" is unreasonable as a matter of law at this stage in the litigation.

The parties' arguments regarding the term "tear-free" mirror their arguments concerning "hypoallergenic." The Amended Complaint alleges that "[r]easonable consumers believe and expect that a product that is labeled as 'tear-free' does not contain eye irritants or compounds that can cause eye damage at a concentration that could elicit eye irritation and/or eye damage." (Am. Cmplt. (Dkt. No. 28) ¶ 89) Defendant argues that this construction is unreasonable as a matter of law because "the phrase 'tear-free' does not suggest the absence of any risk for any eye irritation." (Def. Br. (Dkt. No. 32) at 23 (emphasis in original)) Plaintiffs respond that they "agree." (Pltf. Opp. (Dkt. No. 36) at 21) Accordingly, the Court understands Plaintiffs to be advocating for a definition – as with "hypoallergenic" – that includes the proviso "in a significant number of people." With that proviso, the Court concludes that Plaintiffs' proposed construction of "tear-free" is not unreasonable as a matter of law at this stage in the litigation.

### 2.    Whether the Amended Complaint Adequately Pleads Consumer Deception

To survive a motion to dismiss, the Amended Complaint must plausibly allege that the labelling of the Dove products is "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018) (quoting Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013)). In this regard, the Amended Complaint alleges merely that the Dove products (1) labelled as "hypoallergenic"

"contain substances classified by reputable authorities" as "skin sensitizers" or allergens (Am. Cmplt. (Dkt. No. 28) ¶¶ 92-107); and (2) labelled as "tear-free" contain substances "which have []been classified by governmental authorities as causing . . . eye damage." (Id. ¶¶ 108-11) These allegations are not sufficient to plead consumer deception.

Plaintiffs argue that the Amended Complaint adequately alleges that Unilever's products "all contain high concentrations of allergens [and eye irritants] such that the product will cause an allergic reaction [or eye damage] in a significant number of people." (Pltf. Opp. (Dkt. No. 36) at 21-22, 24-25) Unilever counters that the Amended Complaint "fail[s] to allege any facts concerning the concentration of [allegedly harmful] ingredients [except as to a single ingredient in a single product] . . . [and] fail[s] to allege . . . whether such concentration would produce an allergic reaction in a significant number of people." (Def. Br. (Dkt. No. 32) at 26)

The Amended Complaint cites two systems for classifying "skin sensitizers" and eye irritants: the United Nation's Globally Harmonized System of Classification and Labeling of Chemicals and the standards of the American Contact Dermatitis Society. (Am. Cmplt. (Dkt. No. 28) ¶¶ 92-94 ("Under [the UN Standards,] a substance is a 'Category 1 skin sensitizer' if it causes an allergic response to a significant portion of the population even in extremely small amounts. . . . [The Dermatitis Society] publishes a list of 'Core Allergens' – allergens that most frequently cause allergic reactions in human patch tests.") (emphasis omitted))

The Amended Complaint asserts that Unilever's representations that its Dove products are "hypoallergenic" are false because all of the Dove products listed in the Amended Complaint "contain substances classified by reputable authorities as skin sensitizers," "allergens," or eye irritants. (Id. ¶¶ 95-115) The Amended Complaint lists the concentration of only one of the alleged allergens and eye irritants in one of Dove's products: "cocamidopropyl

betaine makes up 1-5% of Baby Dove's Tip to Toe wash, an amount far more than the
approximately 0.1% concentration shown to cause an allergic response under [UN Standards]
testing." (Id. ¶ 102)  But even this allegation says nothing about whether "the formulation[s] [at
issue] cause[] allergic reactions" or "eye damage."  (See Pltf. Opp. (Dkt. No. 36) at 19)  The
Amended Complaint instead alleges in a conclusory fashion that the "[p]roducts also contain
skin sensitizers/allergens [and eye irritants] in an amount that is known to cause an allergic
response [or eye damage] in a substantial number of people."  (Am. Cmplt (Dkt. No. 28) ¶¶ 96,
100-01 (emphasis omitted))

      In sum, while in their briefing Plaintiffs assert that "their claims focus on the
products' formulation, alleging that the formulation causes allergic reactions" (Pltf. Opp. (Dkt.
No. 36) at 19, 21), the Amended Complaint's specific factual allegations only assert that the
Dove products "contain substances classified by reputable authorities as skin sensitizers" or eye
irritants.  (Am. Cmplt. (Dkt. No. 28) ¶¶ 95, 100; see id., Ex. 9 (Dkt. No. 28-15) (listing Dove
products and the alleged skin sensitizers they contain))  Plaintiffs do not go on to plead factual
allegations demonstrating that the chemicals they cite actually cause allergic reactions and eye
irritation such that Defendant's "hypoallergenic"  and "tear-free" labels are false and misleading.

      Plaintiffs argue, however, that they "need not marshal their evidence in a
complaint" (Pltf. Opp. (Dkt. No. 36) at 27), and that "'allegations may be based on information
and belief when facts are peculiarly within the opposing party's knowledge.'"  (Id. (quoting
United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc., 865 F.3d
71, 81 (2d Cir. 2017)))  But the "[Amended] Complaint does not explain how Plaintiffs came to
such information and belief or what facts, if any, support their conclusions."  Rivera v. S.C.
Johnson & Son, Inc., 2021 WL 4392300, at *5 (S.D.N.Y. Sept. 24, 2021)

In this regard, Judge Abrams' analysis of "information and belief" allegations in

Rivera – which involves a claim that Windex products are misleadingly labelled as "Non-Toxic"

– is instructive:

> [T]his principle [regarding "information and belief" allegations] is inapplicable here, because information about the composition of the Products and more broadly whether they might cause harm is not "peculiarly within the possession and control" of the Company.  The Court arrives at this conclusion for several reasons.
>
> First, even if the precise specifications of the Products are in the Company's exclusive control, information about the effect of those ingredients in their current concentrations is not.  If there were evidence that these widely-sold Products have caused harm[,] . . . Plaintiffs presumably could have marshaled such evidence in the Complaint, and doing so may have made plausible the allegations that the toxic ingredients are present in sufficient concentration to cause harm.  Plaintiffs, however, do not cite any such evidence – whether by reporting their own experiences in using the Products or even from reviews of the Products on the Internet or elsewhere.  Indeed, Plaintiffs do not claim to have suffered any of the harmful effects they assert that the Products can cause.
>
> Second, Plaintiffs might have attempted to analyze the Products, which are widely available.  In similar cases, testing of the product at issue is common.  See Sharpe v. A&W Concentrate Co., 481 F. Supp. 3d 94, 98 (E.D.N.Y. 2020) (noting[] . . . that "scientific testing of the products by an independent laboratory revealed that the vanilla flavoring of the products does not come from the vanilla plant").  The Court does not mean to suggest that a consumer-protection plaintiff will only be able to state a claim if he can retain an expert to conduct sophisticated chemical analysis before bringing suit.  But the fact that the Products can be purchased at stores as ubiquitous as Target and tested suggests that basic facts about their chemical composition is not something exclusively in the control of Defendant.  At the very least, the Complaint could contain allegations as to why such testing would not have been possible here – it does not.  See Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co., 478 F. Supp. 3d 456, 466 (W.D.N.Y. 2020) ("A plaintiff cannot, of course, make a purely conclusory allegation that crucial facts are peculiarly within the defendant's knowledge and control.").
>
> Finally, Plaintiffs could have consulted with experts in the field who might have been able to provide even minimal support for their bald assertion that "the ingredients' likely concentrations or percentages by weight" are sufficient to cause harm.  See Bautista v. CytoSport, Inc., 223 F. Supp. 3d 182, 191 (S.D.N.Y. 2016) ("It may be challenging for a plaintiff to present [facts about a defendant's product] before discovery, . . . but where a claim is valid it is not impossible; for example, experts in the relevant field can be consulted or comparisons to similar products can be made.").

Id. at *5-*7 (citations omitted).

        The analysis in Rivera is directly applicable here.  If evidence existed that Unilever's "hypoallergenic" and "tear-free" products cause allergic reactions or eye damage and irritation, Plaintiffs "could have marshaled such evidence in the Complaint" – but they have not. Id.  Plaintiffs have not alleged that the Dove products have caused them or their loved ones to suffer any allergic reactions or eye irritation and damage, nor have Plaintiffs offered test results or expert reports demonstrating that the concentration of the allegedly harmful ingredients in the Dove products – products that are widely available and were sold to "hundreds of thousands of consumers throughout the United States" (Am. Cmplt. (Dkt. No. 28) ¶ 18) – cause such harm. "These and other avenues for learning more about the [p]roducts were available to Plaintiffs." Rivera, 2021 WL 4392300, at *7.  In sum, information about whether the Dove products are likely to cause allergic reactions or eye damage to significant numbers of people "is not 'peculiarly within the possession and control of the defendant.'"  Id. (quoting Arista Records, 604 F.3d at 120).

        The Court concludes that the Amended Complaint does not adequately plead that the Dove "hypoallergenic" and "tear-free" product labelling is misleading.  Accordingly, Plaintiff Wiggins' claims under the New York General Business Law will be dismissed.[7]

## V.    WIGGINS' BREACH OF EXPRESS WARRANTY CLAIM[8]

        Unilever argues that Wiggins' claim for breach of express warranty should be dismissed because he does not allege (1) the requisite pre-suit notice; or (2) "when [he]

---

[7]  Given this conclusion, the Court does not reach Defendant's argument that Plaintiffs have not adequately alleged an injury under the GBL.  (Def. Br. (Dkt. No. 32) at 26-27)

[8]  The Amended Complaint does not state whether Plaintiff Wiggins' breach of express warranty claim is brought under New York law or the Federal Magnuson-Moss Warranty Act.  (See generally Am. Cmplt. (Dkt. No. 28) ¶¶ 171-78)  Because Wiggins cites New York case law in

purchased the [Dove] [p]roducts or when [he] discovered Unilever's alleged breach," thus making it impossible to determine if he provided notice "within a reasonable time after [he] discovered or should have discovered Unilever's alleged breach." (Def. Br. (Dkt. No. 32) at 27-29 (emphasis omitted))

"[I]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (quoting Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); see also N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

Wiggins argues that he provided notice of Unilever's alleged breach of warranty on August 18, 2021, the day the Amended Complaint was filed, and five months after the instant lawsuit commenced. (Pltf. Opp. (Dkt. No. 36) at 29-30; Am. Cmplt. (Dkt. No. 28); Cmplt. (Dkt. No. 1)) Wiggins further argues that "'the sufficiency and timeliness of the notice is generally a question for the jury.'" (Pltf. Opp. (Dkt. No. 36) at 29 (quoting Hubbard, 1996 WL 274018, at *5))

Most courts in this District have concluded that the filing of a complaint does not constitute adequate notice of a breach of warranty claim:

> [In arguing that a complaint constitutes adequate and timely notice], Plaintiffs cite to a single case, Panda Capital Corp. v. Kopo Int'l, Inc., 242 A.D.2d 690 (2d Dep't 1997). . . . All that the Panda Capital court found was that where the plaintiff had both filed a complaint and an amended complaint and "had

---

support of his warranty claim, the Court assumes that his claim is brought under New York law. (See Pltf. Opp. (Dkt. No. 36) at 29-31 (citing, e.g., Hubbard, 1996 WL 274018, at *4 (discussing breach of warranty claims under the New York UCC); Tomasino v. Estee Lauder Companies Inc., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (same); Patellos v. Hello Prod., LLC, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021) (same)))

> repeatedly made its objections to [defendant's] pattern of deficient performance
> known[,] . . . it [was] at the very least an issue of fact as to whether reasonably
> timely notice of breach was given." See 662 N.Y.S.2d at 586-87.  The Court does
> not believe that such an equivocal statement amounts to a binding rule that
> Plaintiffs' filed complaint, regardless of its temporal distance from the alleged
> breach of the warranty, satisfies N.Y. U.C.C. § 2-607(3)(a).  This belief is
> supported by the Court's inability to locate any authority, from either a New York
> State court or from within this Circuit, that relies on Panda Capital for such a
> broad rule.  Indeed, Mid Island LP v. Hess Corp., 983 N.Y.S.2d 204 (Table), 2013
> WL 6421281 (Sup. Ct. Dec. 2, 2013), a New York state court case that cites to
> Panda Capital, see id. at *4, makes clear that "timely notice is a condition
> precedent to bringing an action for breach of warranty," id. (emphasis added).

Lugones, 440 F. Supp. 3d at 244-45 (citations omitted); see also, e.g., Barton v. Pret A Manger

(USA) Ltd., 535 F. Supp. 3d 225, 246 (S.D.N.Y. 2021) ("The holding of Lugones is consistent

with the view of a leading commentator on the Uniform Commercial Code.") (collecting cases

following Lugones); Clemmons v. Upfield US Inc., 2023 WL 2752454, at *9 (S.D.N.Y. Mar. 31,

2023) ("Giving due deference to Panda Capital but noting that the plaintiff there had assertedly

made its objections known pre-suit, the Court agrees with the majority of district courts that have

addressed this issue."); Dwyer v. Allbirds, Inc., 598 F. Supp. 3d 137, 155 (S.D.N.Y. 2022)

("Although Plaintiff argues that its pleadings may constitute reasonable notice in certain cases,

this is a minority view, not 'a broad rule that a filed complaint qualifies as sufficient and timely

notice.'") (quoting Lugones, 440 F. Supp. 3d at 244).

   A distinct minority of courts have ruled that the issue of whether the filing of a

complaint provides adequate notice presents a fact question for the jury.  See Tomasino, 44 F.

Supp. 3d at 262 n.6 ("New York cases applying N.Y. U.C.C. § 2–607(3) suggest that a plaintiff's

pleadings may constitute reasonable notice in certain cases.") (citing Panda Capital, 242 A.D.2d

690); Patellos, LLC, 523 F. Supp. 3d at 534 (S.D.N.Y. 2021) ("[A] district court in this Circuit

has upheld this form of notice.") (citing Tomasino, 44 F. Supp. 3d at 262 n.6).

34

Here, this dispute need not be resolved, because Wiggins has not properly alleged that whatever notice he provided was within a "reasonable time after" he discovered the alleged breach of warranty.  N.Y. U.C.C. Law § 2-607(3)(a).  Wiggins alleges that he purchased the Dove products over a period of "approximately thirty-six months . . . every four to six weeks" but he does not say when he last purchased a Dove product or when he discovered the alleged defect.  (Am. Cmplt. (Dkt. No. 28) ¶ 21)  As Judge Englemayer noted in finding that the filing of a complaint could "in some circumstances" constitute adequate notice of breach of warranty,

> what is key is not the form of the notice, but its timing – that notice be given promptly after the injury occurs (or, as here, is apparent).  And because a legal action generally need not be filed soon after an injury, the filing of a complaint often may not constitute proper notice.

Patellos, 523 F. Supp. 3d 523, 534 (S.D.N.Y. 2021) ("Here, at least as pled, Patellos filed her first complaint sufficiently promptly after discovering the defect . . . .").

Here, the Amended Complaint does not disclose when Wiggins purchased the Dove products at issue, or when he discovered the alleged defect in these products.  Accordingly, Wiggins has not demonstrated that he gave notice within a reasonable time after he "discovered the alleged breach of warranty." Tyman v. Pfizer, Inc., 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017), report and recommendation adopted, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) ("[P]laintiffs are silent as to when they purchased the Chapstick Products . . . [and] as to when they discovered or should have discovered the alleged breach of warranty. . . . Since plaintiffs fails to allege any facts that would permit the Court to conclude that they notified Pfizer of the alleged breaches within a reasonable time after discovering them, they are 'barred from any remedy.'") (quoting In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013)); Duchimaza v. Niagara Bottling, LLC, 619 F. Supp. 3d 395, 418 (S.D.N.Y. 2022) ("If a plaintiff's complaint is 'silent as to when they discovered or should have

discovered the alleged breach of warranty,' a court cannot conclude notice was served 'within a reasonable time' and remedies for a breach of express warranty are unavailable.") (quoting Tyman, 2017 WL 6988936, at *22-23).[9]

Because the Amended Complaint does not sufficiently plead that Wiggins provided Unilever with notice of the alleged breach of warranty, Unilever's motion to dismiss the breach of warranty claim will be granted.

## VI.   WIGGINS' UNJUST ENRICHMENT CLAIM

Unilever argues that Wiggins' unjust enrichment claim should be dismissed as duplicative of his other claims.  (Def. Br. (Dkt. No. 32) at 29-30)

In response, Wiggins argues that (1) his unjust enrichment claim is not duplicative, because unjust enrichment allows "a longer period of relief than [] deceptive practices claims"; (2) he is permitted to plead unjust enrichment "in the alternative" under New York law; and (3) whether the unjust enrichment claims of "out-of-state putative class members [are] duplicative [] remains to be seen."  (Pltf. Opp. (Dkt. No. 36) at 31-32)

### A.   Applicable Law

"Under New York law, '[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" Barton, 535 F. Supp. 3d at 248 (quoting Parks v. Ainsworth Pet Nutrition, LLC, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019)).  "'[A]n unjust enrichment claim is not available where it simply

---

[9]  Wiggins all but ignores these cases, arguing instead that notice is adequately pled because "the nature of [the Defendant's] breach . . . is not one that consumers can immediately discover." (Pltf. Opp. (Dkt. No. 36) at 30)  But Wiggins has not cited any case holding that a plaintiff is excused from pleading that notice was provided within a reasonable time – as is required by the statute – in such circumstances.

duplicates, or replaces, a conventional contract or tort claim[, however].'" Id. at 248-49 (quoting Shane Campbell Gallery, Inc. v. Frieze Events, Inc., 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020)).

   "Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'"  NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (omission in original) (quoting Sitar v. Sitar, 50 A.D.3d 667 (2d Dep't 2008)).

  **B.**  **Analysis**

   Wiggins' unjust enrichment claim is premised on the same factual allegations underlying his other claims and seeks the same damages.  See Am. Cmplt. (Dkt. No. 28) ¶ 180 ("As a result of [Unilever's] deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the . . . [Dove] [p]roducts, [Unilever] was enriched at the expense of Plaintiffs and the other members of the Class through the payment of the purchase price for [the Dove products]. . . ."))  The unjust enrichment claim is thus duplicative of Wiggins' other claims.

   Wiggins' argument that the longer statute of limitations for unjust enrichment renders that claim not duplicative ignores controlling law.  See Tyman, 2017 WL 6988936, at *20 ("[A] potentially more generous statute of limitations can[not] save an unjust enrichment claim from dismissal where the substance of the claim, as currently pleaded, 'simply duplicates, or replaces, a conventional contract or tort claim.'") (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)).  Wiggins is likewise "incorrect [in arguing that . . . [he] may plead unjust enrichment in the alternative.  This is because [he] could not succeed on [his] unjust enrichment claim and fail on [his] other claims." Hoffmann v. Kashi Sales, L.L.C., 2022 WL 17823171 *9 (S.D.N.Y. Dec. 20, 2022).  Finally, as to Wiggins' argument that dismissal of the

putative class members' unjust enrichment claims is premature, a "'predicate to a plaintiff's right to represent a class is [his] eligibility to sue in [his] own right.  What []he may not achieve [him]self, [he] may not accomplish as a representative of a class.'"  Zottola v. Eisai Inc., 564 F. Supp. 3d 302, 319 (S.D.N.Y. 2021) (quoting In re Initial Pub. Offering Sec. Litig., 341 F. Supp. 2d 328, 344 (S.D.N.Y. 2004)).

Because Wiggins' unjust enrichment claim is duplicative of his other claims, Unilever's motion to dismiss the unjust enrichment claim will be granted.[10]

## VII.   LEAVE TO AMEND

District courts have "broad discretion in determining whether to grant leave to amend."  Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).  Leave to amend may properly be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'"  Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once.  Wright v. Ernst & Young LLP, 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)).  Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for allowing plaintiffs to amend."

---

[10] "Because the Court dismisses the individual claims of each of the named plaintiffs, the Court lacks jurisdiction over the state-law class claims of the unnamed putative class members." Chufen Chen v. Dunkin' Brands, Inc., 2018 WL 9346682, at *8 (E.D.N.Y. Sept. 17, 2018), aff'd, 954 F.3d 492 (2d Cir. 2020) (collecting cases).

In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 2011 WL 4072027, at *2

(S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

Here, Plaintiffs have requested leave to amend "[s]hould the Court conclude that

Plaintiffs' allegations are insufficient." (Pltf. Opp. (Dkt. No. 36) at 28)  Although Plaintiffs have

previously amended, leave to amend will be granted, because this Court cannot find that no

amendment could succeed.

## CONCLUSION

For the reasons stated above, Defendant Unilever's motion to dismiss is granted,

both as to all of Plaintiffs' claims and their request for injunctive relief.  Any motion for leave to

amend will be filed by **August 8, 2023**, and will include as an exhibit the proposed Second

Amended Complaint.  Any proposed Second Amended Complaint "will have to do some

combination of the following:  substantiate Plaintiffs' claims that the in-use concentration of the

potentially harmful ingredients in the [Dove] [p]roducts are sufficient to cause harm,

demonstrate that the [Dove] [p]roducts have actually caused some of the harms Plaintiffs say

they can cause, and/or significantly strengthen Plaintiffs' allegations that the information

necessary to state a claim is exclusively in Defendant's control."  Rivera, 2021 WL 4392300, at

*7.

The Clerk of Court is directed to terminate the motion (Dkt. No. 31).

Dated:  New York, New York
        July 26, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge